No. 91-292

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF
MARCUS ULLAND,

          Petitioner and Respondent,

   and

JAN M. (ULLAND) GREGSON,

          Respondent and Appellant.

FILED

DEC 30 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Dorothy McCarter Judge, presiding.

COUNSEL OF RECORD:

      For Appellant:

      John L. Hollow, Helena, Montana

      For Respondent:

      David N. Hull, Helena, Montana

Submitted on Briefs:  September 24, 1991

Decided:  December 30, 1991

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Jan (Ulland) Gregson appeals the order of the First Judicial District Court, Lewis and Clark County, Montana, which modifies the custody provision of a dissolution decree awarding the parties joint custody of their daughter with physical custody retained by the mother. While retaining the designation of joint custody, the District Court's modification transferred physical custody of the child from the mother, Jan, to the father, Marcus. We affirm.

The parties present the following issues:

1. Did the District Court err in modifying the primary physical custody of the minor child, Rian?

2. Did the District Court err in failing to follow the child's wishes concerning physical custody and primary residence?

3. Did the District Court err in failing to appoint independent counsel to represent the child's interests?

To appreciate the circumstances of this appeal, an overview of the litigation involving this marriage dissolution is appropriate at this point. Marcus and Jan Ulland were married on May 21, 1977. They had one child, Rian Marie, born May 8, 1978. The couple separated in September of 1979; the First Judicial District Court entered a decree of dissolution on May 14, 1980. By stipulation of the parties adopted in full by the court, the decree awarded the parties joint custody of Rian naming Jan as the physical custodian and awarding Marcus reasonable visitation. Further, the parties stipulated that if either parent decided to permanently leave Montana, the leaving party would give the other party fifteen days

2

prior written notice. In the event Jan wished to move from Montana with Rian, the parties agreed to set up reasonable visitation to allow Marcus an opportunity to participate in Rian's upbringing.

On May 14, 1980, the day the District Court entered the decree, Jan gave Marcus the requisite fifteen days written notice that she and Rian were leaving Montana. Approximately three weeks later, Jan and Rian left Montana and Jan remarried.

Upon receiving Jan's notice, Marcus petitioned the court to modify the visitation provisions in the original decree. The District Court concluded that Jan's intention to move from Montana was a change in circumstances justifying alteration of the original decree. Accordingly, the court set forth a specific visitation schedule including unlimited reasonable visitation whenever Marcus was in the geographic area of the child.

On August 23, 1985, Marcus petitioned the court a second time to modify visitation claiming a change in circumstances. Marcus based this petition on Jan's constant moving with Rian to different locations without keeping Marcus apprised of his daughter's whereabouts and phone number, thus making it difficult for him to keep in contact with Rian. When Marcus received no response to his August 23, 1985, petition, he filed a third petition to modify his visitation.

The parties entered into a stipulation, filed with the court November 6, 1985, resolving Marcus' outstanding motions. They agreed that a change in circumstances supported a change in visitation. The stipulation provided a specific visitation schedule and that the minor child would be known by her legal name

(Ulland) and she would be enrolled in school under her legal name. The District Court gave this stipulation full force and effect.

On February 17, 1989, Marcus filed his fourth motion to modify the custody provisions. Marcus asked the court to change primary physical custody from Jan to him. Alternatively, Marcus asked the court to order physical custody to alternate yearly between Marcus and Jan or to set specific dates for visitation. Marcus based this motion on his claim of Jan's continual interference with his visitation rights.

The District Court held a hearing on May 18, 1989, concerning Marcus' February 17, 1989, motion to modify custody. Both parties were represented by counsel. The court verbally admonished Jan for her past interference with Marcus' visitation. The court rejected a change in primary physical custody at that time and awarded Jan another opportunity to comply with court orders and prior stipulations while retaining primary physical custody of Rian. The court ordered Jan to refrain from interfering and to encourage Rian to develop a relationship with Marcus. As a result of this hearing, the court entered an interim order setting forth specific dates that Rian would visit Marcus, including four weeks during the summer in 1989 and the 1989 Christmas holiday. The court awarded Marcus physical custody of Rian for Christmas break and spring break on an alternating yearly basis beginning with Christmas of 1989. Additionally, the court awarded Marcus physical custody of Rian for six weeks during the summers, beginning with the summer of 1990. The court stressed the importance of Jan's compliance with this order. The court warned her that if she failed to comply it

4

would hold her in contempt and punish her to emphasize the severity of her continual non-compliance.

Pursuant to the court's interim order, Rian spent four weeks in the summer of **1989** with Marcus and his new wife. During this visitation, Jan frequently contacted Rian via telephone calls and letters. Jan and her husband refused to address letters to Rian by her legal name, violating the court order and the parties' November 6, **1985,** stipulation which provided that Rian would be known by her legal name.

Following the May **1989** hearing, the parties entered into another stipulation attempting to resolve the parties' difficulties and vitiating the need for the court to issue a final order. This stipulation, adopting the court's requirements concerning visitation periods, was signed by the parties on December 5, **1989,** and filed with the court on December 12, **1989.** Additionally, the stipulation required that Marcus give Jan thirty days notice when he intended to exercise his visitation rights.

Prior to filing this stipulation, Marcus notified Jan that he intended to exercise his visitation rights for Rian's Christmas break. Jan refused to allow Marcus to exercise his Christmas visitation rights, as provided by the court and the December 12, **1989** stipulation, because he failed to give her thirty days notice. Since the court awarded Marcus visitation for Christmas of **1989,** but not **1990,** and Jan refused visitation in **1989,** Marcus tried to arrange his visitation to allow Rian to remain with Jan for Christmas of **1989,** but spend Christmas of **1990** with Marcus in Washington. This agreement was reduced to writing but unexecuted

by Jan.  It was not until January **31, 1990,** that Jan's attorney notified Marcus' attorney that Jan refused to trade Christmas of **1989** for Christmas of **1990.** Needless to say, Marcus lost his court ordered Christmas of **1989** visitation.

Pursuant to the December 12, **1989,** stipulation, Marcus notified Jan of his intent to exercise his visitation rights for spring break of **1990.** He sent advance purchased airline tickets to fly Rian from Helena to Washington.  Jan refused to allow Rian to fly alone.  Consequently, Marcus and Jan each drove to Spokane to exchange Rian, thus reducing Rian's visit with Marcus by two of seven days.

In May of **1990,** Marcus notified Jan of his intent to exercise his six week summer visitation.  Jan notified Marcus that she was filing a petition to modify visitation because Rian did not want to spend the summer with Marcus.  A hearing was scheduled in May but was vacated until August.  After the hearing was delayed, Jan withdrew Rian from school one week early and moved to California for the summer without notifying Marcus of the change of address, violating the parties' December **12, 1989,** stipulation.

Marcus responded to Jan's petition by requesting a change in physical custody.  After hearings conducted on both motions on August **14, 1990,** and September **20, 1990,** the District Court granted Marcus' motion, immediately transferring physical custody of Rian from Jan to Marcus.  The District Court denied Jan's motion to reconsider.  Jan appeals.

As noted from the record and as set forth above, this case has a long and unsettling history.  From the day the court entered the

final decree of dissolution, Marcus has had to continually fight for contact with Rian. The record is replete with numerous instances when Marcus attempted to exercise his visitation rights only to be thwarted by Jan's actions.

While Jan retained physical custody of Rian, Marcus traveled to and from Jan's home to visit Rian. On numerous occasions, Marcus notified Jan that he would be in the area to visit Rian. Jan would not object to visitation. When he arrived, he was either greeted with resistance or he was not greeted at all. Initially, either Jan and Rian would not be home or Jan would resist visitation. Ultimately, when Marcus located Rian, Jan interfered with visitation by not allowing it or restricting it.

As noted above, in addition to having reasonable visitation when Marcus was in the geographic area, the court awarded Marcus visitation for extended periods of time during certain holidays and the summer. To obtain physical custody of Rian for these extended visits required extensive travel. Since Jan refused to allow Rian to fly alone, alternate transportation had to be arranged.

The parties have been before the district court on at least five separate occasions regarding visitation and physical custody of Rian. Each time, Marcus maintained that Jan interfered in his visitation with Rian thereby precluding development of a meaningful father/daughter relationship. Marcus acknowledges that Rian was unwilling to spend time with him, attributing Rian's reluctance to Jan's constant interference. Each time the parties were before the court, the court attempted to structure visitation to facilitate a relationship between Marcus and Rian.

7

Did the District Court err in modifying the primary physical custody of the minor child, Rian?

Marcus and Jan originally stipulated to and were awarded joint custody of Rian. Joint custody is presumed to be in the best interest of the child, § 40-4-224(1), MCA, and is awarded to assure frequent and continual contact of the minor child with both parents. In re Marriage of Bergner (1986), 222 Mont. 305, 307, 722 P.2d 1141, 1143. Physical custody should be arranged as equally as practical between the parents to comply with the express purpose of an award of joint custody, with the child's best interest as the primary consideration. Section 40-4-224(2), MCA.

Modification of physical custody within a joint custody arrangement is proper when the change is in the best interest of the child. In re Marriage of Mitchell (Mont. 1991), 809 P.2d 582, 584, 48 St.Rep. 353, 354; citing In re Marriage of Keil (1990), 246 Mont. 344, 347, 805 P.2d 1334, 1336. A request to change the physical custodian of the child requires an application of § 40-4-224(2), MCA, which states in part:

> "[J]oint custody" means an order awarding custody of the minor child to both parents and providing that the physical custody and residency of the child shall be allotted between the parents in such a way as to assure the child frequent and continuing contact with both parents. The allotment of time between the parents must be as equal as possible: however,
>
> (a) each case shall be determined according to its own practicalities, with the best interest of the child as the primary consideration: . . . .

The District Court must consider the factors set forth in § 40-4-212, MCA, when determining whether the modification of

8

physical custody is in the child's best interest. In re Marriage of Stephenson (1988), 230 Mont. 439, 445, 750 P.2d 1073, 1077. The court is under no obligation to consider the more stringent factors set forth in § 40-4-219, MCA, when faced with an action for modification of physical custody rather than an action for termination of joint custody. Marriage of Keil, 246 Mont. at 347, 805 P.2d at 1336.

In determining the child's best interest, the district court must consider the following relevant factors:

> (a) the wishes of the child's parent or parents as to his custody:

> (b) the wishes of the child as to his custodian:

> (c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

> (d) the child's adjustment to his home, school, and community:

> (e) the mental and physical health of all individuals involved:

> (f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and

> (g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

Section 40-4-212, MCA.

Jan contends that the District Court erred because it failed to make specific findings concerning all of the best interest factors listed in § 40-4-212, MCA. We disagree. All that the statute requires is that the court consider the factors listed. The court is not required to make specific findings concerning each element of § 40-4-212, MCA, but must "express the 'essential and

9

determining' facts upon which its conclusions rest," _Marriage of Mitchell_, **809** P.2d at **584-85, 48** St.Rep. at **354;** citing Cameron v. Cameron **(1982),** 197 Mont. **226, 230-31, 641** P.2d **1057, 1060.**

Examination of the record before us reveals that the District Court considered the relevant factors. First, it is undisputed that the court was well aware that both parents desired physical custody of Rian. Second, after interviewing Rian in chambers to determine her wishes concerning physical custody, the court ascertained and entered findings pertaining to Rian's unwillingness to spend time with Marcus. Third, the court made specific findings concerning the interaction and interrelationship between Rian and the Gregsons and Rian and the Ullands. In its Findings of Fact, Conclusions of Law and Order, the court noted:

> **31.** Jan, Glenn Gregson, and Rian have a close, loving family relationship. **. . .**
>
> **32.** Marcus and his wife, Dawn Ulland, have a loving relationship with Rian, and they get along well together.

Fourth, the court considered Rian's adjustment to her new home with Marcus finding that Rian would show resistance to the change but concluded that Rian's best interests would be fostered if Rian and Marcus obtained professional counseling to help Rian adjust.

Neither party presented evidence and the District Court did not make any findings concerning the last three factors listed in **§ 40-4-212,** MCA. As such, these factors are not relevant and the District Court did not err in failing to consider them.

This Court will not overturn the district court's findings unless they are clearly erroneous. Rule 52(a), M.R.Civ.P. In custody modification cases, it is particularly important for this

10

Court to defer to the district court which personally evaluated the testimony. In re Marriage of Anderson (1989), 240 Mont. 316, 320, 783 P.2d 1372, 1374-1375. The testimony presented by the parties is diametrically opposed. However, resolving conflicts in testimony is the trier of fact's function. Marriase of Mitchell, 809 P.2d at 584, 48 St.Rep. at 354. The District Court listened to the testimony, reviewed the exhibits, and was persuaded by the evidence presented on behalf of Marcus. We will not substitute our judgment for that of the district court unless the appellant shows an abuse of the district court's discretion. Marriase of Mitchell, 809 P.2d at 584, 48 St.Rep. at 354.

The District Court's findings reveal that the court based its decision on Rian's best interest. The findings support the court's consideration of Rian's best interest concluding that it was in Rian's best interest to change physical custody to enable Rian and Marcus to form a meaningful relationship. Accordingly, we hold that the District Court did not err in modifying custody by transferring physical custody of Rian from Jan to Marcus.

## II.

Did the District Court err in failing to follow the child's wishes as to her physical custody and primary residence?

As previously stated, the court was statutorily mandated to consider Rian's wishes when determining her best interest. Section 40-4-212, MCA. However, the court's decision after considering the child's wishes is within the court's discretion.

Considering the court's conversation with Rian, it is clear that the court did not err in failing to follow her wishes. The

11

trial judge is singularly equipped to assess a young child's ability to formulate and articulate her custody wishes and weigh that preference in light of the other evidence and factors enumerated in § 40-4-212, MCA. In re Marriage of Merriman (Mont. 1991), *807* P.2d 1351, 1354, 48 St.Rep. 275, 276. A child's expressed wishes are not determinative of best interest. <u>Marriage of Merriman</u>, 807 P.2d at 1354, 48 St.Rep. at 276.

The District Court and all parties agree that Rian would rather live with Jan: Rian clearly expressed to the court her strong desire <u>not</u> to live with Marcus. In spite of Rian's wishes to remain with Jan, the District Court concluded that Rian's best interests required the opportunity to have meaningful relationships with both Jan and Marcus. Rian has been given the opportunity to develop such a relationship with Jan. She has been deprived of the opportunity to develop such a relationship with Marcus due to Jan's continued interference and Jan's fostering and nurturing of the father/daughter relationship between Rian and her step-father, which has frustrated any chance for a relationship between Rian and Marcus. Due to Rian's age, the court found that this would be the last opportunity for Rian and Marcus to develop a strong and lasting father/daughter relationship. Further, if Rian remained with Jan, her contact with Marcus would only diminish and a healthy father/daughter relationship would never develop.

A review of the record reveals that the District Court considered Rian's wishes along with the other best interest factors of § 40-4-212, MCA, and weighed them accordingly. We hold that the District Court did not err in modifying physical custody of Rian

12

despite Rian's expressed preference to remain with Jan.

                                    III.

Did the District Court err in failing to appoint independent counsel to represent Rian's interests?

Section **40-4-205,** MCA, states "[t]he court *may* appoint an attorney to represent the interests of a minor dependent child with respect to his support, custody, and visitation. . . ." (Emphasis added.) Neither party moved the District Court for independent counsel to represent Rian's interests at the August **14,** 1990, or the September 20, 1990, hearings. This Court will not consider an issue for the first time on appeal which the parties failed to raise at the district court. Marriage of Merriman, 807 P.2d at **1354, 48** St.Rep. at 276.

Based on the foregoing discussion, we affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

                                    13

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

The majority opinion is based almost exclusively on the testimony of Marcus Ulland (the father) and representations made in affidavits filed by his attorney.

There was other evidence in the record from the testimony of Jan Gregson (the mother), several counselors, and Rian Ulland herself which provide a different explanation for the deterioration of relations among these three people.

Rian Ulland has lived with her mother for the first 12 years of her life. She was a part of the family unit formed by her mother and her stepfather for ten years immediately preceding the District Court's decision which transferred custody to her father.

Rian had spent most of her formative years in Helena, and enrolled in the Helena school system in kindergarten. By all accounts, she had an active, successful, and happy life. She was involved in her church youth group, taught swimming lessons at the YMCA, had a role in the Middle School play immediately before the District Court's decision, and had planned to be in the play for the next semester. At the time of the District Court hearing, she was about to try out for the swim team; she was a member of the seventh grade basketball team, and she had successfully tried out for a singing group at the Middle School known as "Celebrations."

In her interview with the District Judge, Rian explained that it was she who requested that her mother ask the court to modify the visitation provisions in her parents' divorce decree so that

**14**

she would not have to spend so much time with her father. She pointed out that she loved her mother and stepfather very much and enjoyed living and spending time with them, but did not feel that her father had ever made much of an effort to get to know her. She stated that her favorite activities, other than her athletic interests in softball, swimming, and basketball, were spending time with her friends, family, and maternal grandparents.

By all accounts, the family unit formed by the mother, stepfather, and Rian was an extremely close, loving, and nurturing family.

James Farrell is a counselor who specializes in working with children and evaluating dysfunctional families. He evaluated Rian prior to the most recent hearings held in the District Court. From that evaluation he concluded the she was pleasant, had an appropriate demeanor, was brighter than average, and assertive. He reported that her living situation with her mother was a positive one, and found no evidence that her mother had interfered with her ability to form a positive relationship with her father.

The only counselors, in addition to James Farrell, who provided opinions in this case were Jane S. Fisher, Ph.D., who evaluated Rian subsequent to the court's decree, and Marcia K. Wall, Rian's counselor at Helena Middle School.

Ms. Fisher concluded that Rian had an extremely close and bonded relationship with her mother, but that she was uncomfortable with and did not trust her father. She concluded that the responsibility for Rian's lack of a relationship with her father

15

was his. Following the District Court's decision, Rian was unable to sleep, unable to eat, confused, frightened, and depressed.

Ms. Wall described Rian as a wonderful girl who was mature beyond her years and academically very successful. During the semester prior to the District Court's decision transferring custody to her father, she had nearly an "A" average in school. It was Ms. Wall's opinion that it was in Rian's best interest that she be left in the custody of her mother and stepfather.

There was substantial evidence that Rian's estrangement from her father was not primarily related to the recent disputes between her mother and father regarding exercise of her father's visitation rights.

There was evidence that during the first seven years of her life, Rian's father made very little effort to communicate with her, and that even in the most recent years prior to the District Court's hearing, his efforts were sporadic and inconsistent. There was substantial evidence that her father's unpredictable efforts to spend time with her were a disruption to her very active life. Many of the conflicts which arose between her mother and father over visitation resulted from efforts by her mother to protect her life from repeated disruption.

I provide this background information to point out that there was more than one version of the events which led to the District Court hearing to modify custody. However, even if one accepts the version of events reported by the father, as did the District Court and the majority, it appears to me that the result of the District

Court's decision is simply to punish Rian's mother for her lack of cooperation, rather than provide for Rian's best interest.

In *Foss v. Leifer* (1976), 170 Mont. 97, 550 P.2d 1309, we stated that:

> [S]ection 48-339, R.C.M. 1947 [now § 40-4-219, MCA], . . . clearly provides district courts may not exercise discretionary power to modify a prior custody decree unless two basic elements are shown to exist: 1) new facts or facts unknown to the court at the time the initial decree was entered demonstrate that a change has occurred in the circumstances of the child or those of his custodian; and 2) this change is sufficient to warrant a modification in order to promote the particular child's best interests. This basic standard was applied in this jurisdiction long before the enactment of the new law, and a determination of which law would be applicable under the facts presented would have no bearing on the result. *Jewett v. Jewett*, 73 Mont. 591, 237 P. 702; *Trudgen v. Trudgen*, 135 Mont. 174, 329 P.2d 225; *Simon v. Simon*, 154 Mont. 193, 461 P.2d 851.
>
> . . . .
>
> It is elemental that the phrase "change in circumstances" is a term of art which must not be considered in a vacuum. No change in circumstances, regardless of its substantiality, is legally sufficient to support a modification order altering custody unless the best interests and general welfare of the child will be promoted. *Altmaier v. Altmaier*, 135 Mont. 404, 340 P.2d 829; *Haynes v. Fillner*, 106 Mont. 59, 75 P.2d 802. In all cases, the lodestar of the district court in exercise of its discretion is the welfare and best interests of the child, and not the parent. *Grant v. Grant*, 166 Mont. 229, 531 P.2d 1007, 32 St.Rep. 191; *In re Adoption of Biery*, 164 Mont. 353, 522 P.2d 1377; *Turk v. Turk*, 164 Mont. 35, 518 P.2d 804.

*Foss*, 550 P.2d at 1311.

While the District Court's findings of fact make frequent reference to the father's lack of relationship with his daughter and the mother's role in adversely affecting that relationship,

17

there is absolutely no explanation of how the daughter's best interest will be served by uprooting her from the only family she has ever known and taking her from the primary community in which she has lived and where she has prospered to send her to live with a family that she dislikes in unfamiliar surroundings over 500 miles away.

Furthermore, the District Court made practically no findings regarding those statutory factors which must be considered in deciding what is in a child's best interest. Section **40-4-212,** MCA, provides in relevant part that:

> (1) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors, including but not limited to:
> (a) the wishes of the child's parent or parents as to his custody;
> (b) the wishes of the child as to his custodian;
> (c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
> (d) the child's adjustment to his home, school, and community;
> (e) the mental and physical health of all individuals involved;
> (f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and
> (g) chemical dependency, **as** defined in 53-24-103, or chemical abuse on the part of either parent.

The last of these two factors were not relevant in this case. However, all of the first five factors, had they been considered, compel a conclusion that the District Court abused its discretion by transferring custody from the mother to the father. Although the wishes of the child's parents were divided, it was the child's specific request that she be allowed to remain in the only family

**18**

unit that she had ever known. At the age of 12, her preference should have been given significant consideration.

The interaction of Rian with her family, her community, and her maternal grandparents strongly favored allowing her to continue living with her mother in Montana. The undisputed evidence was that she was extremely well adjusted to her home, school, and community, and that her mental and physical health were exceptional.

Not only did the statutory factors strongly favor continued custody with her mother, but the District Court failed to consider all but one of these factors in its findings of fact. In considering Rian's interaction and interrelationship with her parents, the District Court found:

> 31. Jan, Glenn Gregson, and Rian have a close, loving family relationship. Rian is active in school and extracurricular activities, including church, YMCA, theater, sunday school, and swimming.

> 32. Marcus and his wife, Dawn Ulland have a loving relationship with Rian, and they get along well together.

The District Court made no findings regarding any specific element which would support a change of custody to Rian's father.

In the past, we have refused to affirm findings that were deficient in this respect. In *In re the Marriage of Keating* (1984), *212* Mont. 462, 689 P.2d 249, we held that:

> An award of custody shall be determined in accordance with the best interest of the child. In determining custody in accordance with the best interest of the child, the District Court is statutorily required to consider all relevant factors including:

**19**

> "(1) the wishes of the child's parent or parents as to his custody;
> (2) the wishes of the child as to his custodian;
> (3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;
> (4) the child's adjustment to his home, school, and community; and
> (5) the mental and physical health of all individuals involved." Section 40-4-212, MCA.
>
> . . . .
>
> "The District Court need not make specific findings on each of the elements. *Speer v. Speer* (Mont. 1982), [201 Mont. 418,] 654 P.2d 1001, 1003, 39 St.Rep. 2204, 2206. However, the 'essential and determining facts upon which the District Court rested its conclusion' must be expressed. *Cameron v. Cameron* (1982), 197 Mont. 226, 231, 641 P.2d 1057, 1060." *Hardy v. Hans* (Mont. 1984), [212 Mont. 25,] 685 P.2d 372, 374, 41 St.Rep. 1566, 1569.
>
> . . . .
>
> *Hardy* is distinguishable from this case in that here there are no findings or other indications by the court that it considered each of the factors set forth in Section 40-4-212, MCA. Absent an indication that the trial court considered all of the statutorily mandated factors, the award of custody cannot be upheld.

*Keating*, 689 P.2d at 251-52.

I would reverse the judgment of the District Court for several reasons. First of all, there is no indication that the District Court considered all of the statutorily mandated factors set forth in § 40-4-212, MCA, in modifying the award of Rian's custody.

Second, if the court had considered all of the statutorily mandated factors, it would have been a clear abuse of its discretion to change custody from Jan to Marcus. This decision did

20

not further Rian's best interest in any way. It uprooted her, against her own wishes and the advice of every counselor she had ever seen, from her community, her family, and all other reliable relationships she had grown to depend on. By every factor which the court was required to consider, it was in Rian's best interest to continue in the environment and the family in which she had prospered. The District Court's order was clearly to punish Rian's mother and reward her father. However, there is very little, if any, discussion about Rian's interests in this case.

Under these circumstances, it is difficult to conclude that Rian's best interest was the District Court's primary consideration. For that reason, I would reverse the judgment of the District Court.

_____
Justice

I concur in the foregoing dissent of Justice Trieweiler.

_____
Chief Justice

21

December 30, 1991

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

JOHN L. HOLLOW
Attorney at Law
44 West 6th Ave.
Helena, MT 59601

DAVID N. HULL
Attorney at Law
P.O. Box 534
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy