No.  94-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

TERRI ANN BOYER,

     Petitioner and Appellant,

  and

GARY GREG BOYER,

     Respondent and Respondent.

FILED

DEC 19 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Leonard  J.  Haxby,  Christine  D.  Somers,  Butte,
Montana

     For Respondent:

        Respondent did not appear on appeal.

Submitted on Briefs:  June 29, 1995

Decided:  December 19, 1995

Filed:

_____
Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Terri Boyer (Terri) appeals an order of the Second Judicial District Court, Silver Bow County, which granted the motion of Respondent Gary Boyer (Gary) to modify the parties' divorce decree, and denied Terri's motion to find Gary in contempt of court for failing to abide by the dictates of the decree.

Affirmed in part, reversed in part, and remanded.

## ISSUES

The following dispositive issues were raised on appeal:

1. Did the District Court err by modifying the custody of the parties' two younger children?

2. Did the District Court err by awarding Gary liberal visitation or by permitting him to act as the children's day-care provider?

3. Did the District Court err by refusing to hold Gary in contempt?

4. Did the District Court err by refusing to allow interest to be added to a $1,438.82 debt owed to Terri by Gary?

5. Did the District Court err by ordering Gary to repay the $1,438.82 debt at a rate equal to $7.50 per month?

## FACTS

Terri and Gary were married in 1978 and divorced in 1992. They have two minor daughters, Natoshia and Tristan, and one minor son, Gage. The parties' January, 1992 divorce decree gave sole custody of all the children to Terri, and gave Gary reasonable visitation. The decree provided that Gary would set up a $1,000

2

trust fund for each child using funds from the estate of his father. It further provided that Gary was to sell the family home and use the proceeds to pay off the parties' medical and credit card debts.

In February, 1992, the parties stipulated to the amendment of the final decree. By that stipulation, Gary was granted unlimited visitation. The stipulation also set out the specific medical and credit card debts which were to be paid by Gary once the house was sold.

On June 1, 1993, Gary moved the District Court to modify the divorce decree. By his motion, Gary contended that his older daughter, Natoshia, resided with him and he consequently requested a change in the status of her custody. Gary's motion explicitly limited the requested custody change to Natoshia only, and requested that Terri retain custody of Tristan and Gage.

On the same day, Terri moved the District Court to hold Gary in contempt for failing to sell the family home and pay off the couple's debts, and for failing to set up the children's trust funds, as ordered by the decree. Gary responded that the decree did not specify a deadline for either the sale of the house or the establishment of the trust funds, and that therefore he was not in contempt.

The District Court held hearings on both motions on June 30 and July 20, 1993. It appointed a Special Master to investigate and ordered him to submit his findings and conclusions to the District Court.

On April 11, 1994, the District Court issued its Findings of Fact, Conclusions of Law and Order which adopted the Special Master's proposed findings and conclusions. It also incorporated modifications to the Special Master's findings and conclusions which were requested by Gary through a "Notice of Respondent's Request to Adopt the Special Master's Findings of Fact, Conclusions of Law and Order with Modifications."

In its order, the District Court specifically noted Terri's failure to object to the Special Master's proposed findings or to Gary's requested modifications. However, the Special Master's proposed findings and Gary's "Notice of Respondent's Request" to modify the same were filed with the District Court on April 15, 1994, four days after the District Court had entered its final order in the matter.

Terri appeals from the District Court's order. Gary did not appear in this appeal.

I

Did the District Court err by modifying the custody of the parties' two younger children?

Terri first contends that the District Court erred by changing the custody of the two younger children from sole to joint. She claims that neither party formally moved for such a change and that the District Court lacked jurisdiction to alter the existing arrangements.

Section 40-4-219, MCA, provides:

> The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have

4

arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or the child's custodian and that the modification is necessary to the serve the best interest of the child and if it further finds that:
> (a) the custodian agrees to the modification;
> (b) the child has been integrated into the family of the petitioner with consent of the custodian;
> (c) the child's present environment endangers seriously the child's physical, mental, moral, or emotional health and that the harm likely to be caused by a change in environment is outweighed by its advantages to the child;
> (d) the child is 14 years of age or older and desires the modification;
> (e) the custodian willfully and consistently:
>> (i) refuses to allow the child to have any contact with the noncustodial parent; or
>> (ii) attempts to frustrate or deny the noncustodial parent's exercise of visitation rights;
> (f) the custodial parent has changed or intends to change the child's residence to another state.

In order to change an existing custody arrangement, the District Court must find changed circumstances as well as one or more of the factors listed in § 40-4-219(a)-(f), MCA. Such findings are a jurisdictional prerequisite for a change in custody and, without them, a district court may not modify a prior award of sole custody. In re Marriage of Johnson (1994), 266 Mont. 158, 879 P.2d 689; In re Marriage of Anderson (1989), 240 Mont. 316, 783 P.2d 1.372; In re Marriage of Stephenson (1988), 230 Mont. 439, 750 P.2d 1073.

Terri apparently agreed to change the custody of Natoshia from sole to joint, but the record does not reflect that she agreed to such a change regarding Tristan and Gage. While the order in this case purports to change the custody of all the children from sole to joint, the District Court did not make the sort of findings

5

which § 40-4-219, MCA, mandates. Without such findings, the court had no jurisdiction to modify the existing custody arrangements.

Furthermore, neither party by their pleadings raised the custody of Tristan and Gage as an issue. On the contrary, in his motion to change the custody of Natoshia, Gary specifically requested that Terri retain custody of both Tristan and Gage. A judgment is conclusive only so far as it determines matters which by the pleadings are put at issue. In re Marriage of DiPasquale (1986), 220 Mont. 497, 499, 716 P.2d 223, 225.

Because the issue of the custody of Tristan and Gage was not properly before the District Court, and because it failed to comply with the dictates of § 40-4-219, MCA, we hold that the District Court lacked jurisdiction to change the existing custody arrangements regarding the two younger children. Under the original divorce decree and later stipulation, Terri retains sole custody of Tristan and Gage, and Gary has the right to visitation.

II

Did the District Court err by allowing Gary liberal visitation or by permitting him to act as the children's day-care provider?

Terri next contends that the District Court erred by granting Gary liberal visitation and by allowing him to act as the children's day-care provider when he is not working.

The original divorce decree granted Gary "reasonable" rights to visitation, and the stipulation granted him an "unlimited" right to visit the children in their home in order to allow him to visit them "to the fullest extent possible." While the stipulation

6

contemplated long-distance visitation, as Terri and the children were then planning a move to California, nothing in it indicates that the visitation arrangements were to be different should Terri and the children return to Montana, as in fact they have. Therefore, by ordering that Gary is to have liberal visitation, the District Court was not modifying visitation, but merely clarifying and confirming that Gary is entitled to liberal visitation under the original terms of the stipulation.

Nevertheless, Terri contends that Gary should not enjoy liberal visitation with the younger children or be allowed to act as their day-care provider. She contends that he does not supervise them properly or feed them nutritiously, and notes that the two daughters do not get along. At the hearing, she also alleged sexual improprieties involving Gary and the children, which he emphatically denied.

The district court has broad power to address all problems concerning custody and visitation.

> The standard of review for custody and visitation is whether substantial credible evidence supports the district court's judgment. We will overturn a court's custody or visitation decision only when the court's findings and conclusions clearly demonstrate an abuse of discretion.

In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723.

Further, this Court may not substitute its judgment for that of a district court in making a finding based to a large extent on credibility and weight of the evidence. Woolf v. Evans (1994), 264 Mont. 430, 872 P.2d 777. "[T]he trial court, having had the

7

opportunity to observe the demeanor and judge the credibility of the witnesses, is in a better position to resolve conflicting factual testimony than is this Court. In re Marriage **of** Gerhart (1990), 245 Mont. 279, 800 P.2d 698." In re Marriage of Newton (1992), 255 Mont. 463, 466, 844 P.2d 47, 49.

All the allegations Terri makes on appeal were properly made before the District Court, who heard testimony from both parties as well as several other witnesses. It then determined the credibility of the parties and witnesses, as well as the weight to be given to their testimony. The District Court found Gary to be an appropriate day-care provider for the children, and substantial credible evidence supports this finding, as well as the finding that Gary should receive liberal visitation. We will not substitute our judgment for that of the District Court, which had the opportunity to evaluate the evidence personally. Accordingly, the order of the District Court is affirmed regarding these issues.

## III

Did the District Court err by refusing to hold Gary in contempt?

The original divorce decree provided that Gary would set up a trust fund of $1,000 for each child, using funds from the estate of his father. When he failed to establish the trust funds, Terri moved to have him held in contempt. The District Court denied her motion and declined to hold Gary in contempt. Terri claims this denial was error.

Unlike contempt orders in other types of cases, which are reviewable only by writ of certiorari, contempt orders in family law cases may be appealed. In re Marriage of Dreesbach (1994), 265 Mont. 216, 875 P.2d 1018. However, this Court's review is limited to whether the district court acted within its jurisdiction and whether the evidence supports its finding. Dreesbach, 675 P.2d at 1023; In re Marriage of Sullivan (1993), 258 Mont. 531, 539-40, 853 P.2d 1194, 1200.

Terri does not assert that the District Court lacked jurisdiction. Instead, she attacks on evidentiary grounds its refusal to hold Gary in contempt. The decree specified that the trust funds would be funded from the estate of Gary's father. Gary admitted that he had not set up the trust funds as required, but would do so upon the sale of the family home. He therefore admitted that he was in violation of the decree, and the District Court could justifiably have found him to be in contempt. However, the court instead ordered him to set up the trust funds within 90 days of the date of the order. It is the responsibility of the District Court to enforce its own orders, and the court has the discretion to grant extensions if it deems proper. Therefore, the District Court acted within its authority in denying Terri's motion. Accordingly, the District Court's refusal to hold Gary in contempt is affirmed.

IV

Did the District Court err by refusing to allow interest to be added to a $1,438.82 debt owed to Terri by Gary?

The original divorce decree provided that Gary would pay certain medical and credit card debts once the family home was sold. The stipulation set out specifically what amounts were owed, and to whom. Since Gary did not sell the house or pay the debts, Terri was forced to make partial payments to several parties in order to preserve her good credit history. Terri paid a total of $1,438.82 towards debts which were Gary's responsibility pursuant to the decree. The District Court found that Gary did in fact owe this amount to Terri, but concluded that she, as a matter of law, was not entitled to receive interest since she had made the payments voluntarily.

We find this conclusion to be erroneous. Section 27-1-211, MCA, provides:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

Gary was required to pay certain debts on behalf of Terri, which he did not pay. Because of his non-payment, Terri risked damaging her credit rating and her ability to obtain continuing services from certain doctors. In order to prevent such a result, Terri paid part of the debts herself. Therefore, Gary now has an obligation to reimburse her, which he does not dispute.

Gary owes Terri damages in an amount which can be and has been determined by calculation. She is therefore entitled to interest pursuant to § 27-1-211, MCA, from the date that her right to

10

recover vested. Her right to recover vested on the date she paid each debt and, in so doing, assumed the lender's right to be repaid.

The fact that Terri paid part of the debts voluntarily cannot change this result. To clarify, her payments were not wholly voluntary; Terri felt compelled to pay in order to preserve her relationships with the doctors and creditors. In any case, § 27-1-211, MCA, extends to all parties who are entitled to recover damages, irrespective of how the damages were incurred.

Pursuant to § 27-1-211, MCA, we hold that Terri is entitled to interest on the debt owed to her, beginning on that date or dates that her right to be repaid vested. Accordingly, we reverse and remand this issue to the District Court for a factual determination of when Terri's right to collect interest began.

V

Did the District Court err by ordering Gary to repay the $1,438.82 debt at a rate equal to $7.50 per month?

The Special Master's proposed findings and conclusions in this case acknowledged the debt owed to Terri, and would have required Gary to repay her in one lump-sum upon the sale of the house. In his request to modify those findings and conclusions, Gary contended it would be "very difficult" for him to pay Terri a lump-sum payment, because the house had been sold "on a contract" and, after making the monthly mortgage payment, he was only receiving $7.50 per month.

11

In its final order, the District Court accepted Gary's proposed modifications without requiring any showing of proof regarding the sale of the home or the equity payments Gary is receiving. In explaining its adoption of Gary's proposed modifications, the court noted Terri's failure to object to any of Gary's proposals.

As noted above, however, the Special Master's proposed findings and conclusions, along with Gary's motion to modify them, were filed on April 15, 1994. This was four days after the filing of the District Court's final judgment, which substantially incorporated both the proposed findings and Gary's proposed modifications.

Terri alleges that she never objected to either document because she never saw them until after they were filed and the District Court's final judgment was handed down. Nothing in the record contradicts this assertion. Terri alleges that it was an abuse of discretion for the District Court to allow Gary to repay her at the rate of $7.50 per month, and essentially penalize her for failing to object to documents she had never seen. We agree. At the current rate, it will take Gary sixteen years to pay off this debt. We therefore remand this issue for the factual determination of Gary's ability to pay and for the institution of a reasonable payment schedule.

Affirmed in part, reversed in part and remanded to the District Court for further proceedings in accordance with this opinion.

_William E. Hunt_
Justice

12

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

December 19, 1995

### CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Leonard J. Haxby, Esq.
Christine D. Somers, Esq.
1485 Continental Drive
P.O. Box 3008
Butte, MT 59702-3008

Gary Gregg Boyer
1317 West Granite Street
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy