No.   94-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

LARRY D. PELTIER,

     Petitioner and Appellant,

  and

JAQUELINE M. PELTIER,

     Respondent and Respondent.

FILED

AUG 2 2 1996

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln.
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    George B. Best, Kalispell, Montana

  For   Respondent:

    Donald L. Shaffer, Libby, Montana; Amy Guth, Libby,
Montana (Guardian ad litem)

FILED

AUG 2 2 1996

Filed:

*Ed Smith*

CLERK OF SUPREME COURT,
STATE OF MONTANA

Submitted on Briefs:   June 27, 1996

Decided: August 22, 1996

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant Larry D. Peltier (Larry) appeals the decision of the Nineteenth Judicial District Court, Lincoln County, ordering that residential custody of the parties' minor child be shared between him and Respondent Jaqueline M. Peltier (Jaqueline) on an alternating yearly basis. We affirm.

Jacqueline and Larry were married in 1985 and divorced in 1991. They have one daughter, Christina, who was born in 1989. Jacqueline is a citizen of Scotland who never successfully obtained permanent-resident status in the United States during the marriage. After the divorce, the Immigration and Naturalization Service (INS) accordingly ordered her to leave the country or face deportation.

The parties share joint custody of Christina. At the time of the divorce, they agreed to alternate residential custody of Christina every six months during her early childhood and to postpone until Christina turned five the decision regarding which parent should have residential custody during the school year.

In July of 1991, faced with deportation, Jaqueline returned to Scotland. Due to financial difficulties, she could not return to the United States to assume custody of Christina for eighteen months. During that time, Christina resided with her father or

with her paternal grandparents.  In December of 1992, Jaqueline obtained a visitor's visa to return to the United States, but Larry refused to transfer custody of Christina to her.  After Jaqueline obtained a court order, the previous arrangement of alternating custody arrangement every six months finally began.  Once Jaqueline returned to the United States, Larry repeatedly contacted the INS to report Jaqueline for alleged noncompliance with the terms of her visa and to ask when she would be leaving the country.

In August of 1994, Christina having turned five, the District Court held a hearing to determine which parent  should have residential custody of her during the school year.  The District Court concluded that Larry's actions in repeatedly contacting the INS constituted a concerted attempt to have Jacqueline deported with the intent to prevent her from having access to Christina. On this basis,  the District Court awarded residential custody to Jaqueline.  Larry appealed the decision to this Court.

In March of 1995, this Court remanded the case to the District Court.  In June of 1995, Jaqueline was deported to Scotland. In December of 1995, the District Court held a further hearing in the **matter,**  with Jaqueline appearing by phone  from  Scotland.  In February of 1996, the District Court issued new findings of fact and conclusions of law and ordered residential custody of Christina to alternate yearly between the parties.   The District Court further ordered an additional hearing to take place after two years, at which time Christina will have experienced one year of

living with her father in Montana and one year of living with her mother in Scotland. Larry again appeals.

Larry raises two issues on appeal:

1. Did the District Court comply with this Court's 1995 order remanding the case?

2. Did the District Court err in concluding that alternating yearly custody is in the best interests of the child?

The standard of review for cases involving custody and visitation is whether substantial credible evidence supports the judgment of the district court. A district court's decision regarding custody or visitation will be overturned only if the court's findings and conclusions clearly demonstrate an abuse of discretion. In re Marriage of Boyer (1995), 274 Mont. 282, 288, 908 P.2d 665, 668 (citing In re Marriage of Hunt (1994), 264 Mont. 159, 164, 870 P.2d 720, 723). In our order of April 27, 1995, this Court directed the District Court to determine residential custody on the basis of the best interests of the child, pursuant to § 40-4-212, MCA.

Larry first argues that the District Court did not comply with this Court's April 1995 order remanding the case. In our order, we remanded the matter to the District Court "for a further hearing, if necessary, and for entry of findings of fact, conclusions of law and an order determining the future residential custodian of the parties' minor child on the basis of § 40-4-212, MCA." On remand, the District Court gave residential custody of Christina to Larry for the remainder of that year and then to Jaqueline for one year,

4

with a hearing to take place at the end of that two-year period to evaluate Christina's progress. Larry contends this arrangement is not a permanent disposition of this matter and, therefore, is not in compliance with our order.

Larry is correct that our order contemplated a permanent determination of future residential custody of the parties' minor child. But the District Court was also obligated to determine the best interests of the child before making such a decision pursuant to § 40-4-212, MCA. In this case, the District Court felt that it could not conclude whether it would be in Christina's best interests for Jacqueline to have permanent residential custody because it lacked sufficient information to make such a determination at this time.

Due to Jaqueline's geographic distance and her financial difficulties, she has never had the opportunity to develop an independent relationship with Christina. The District Court could not draw any conclusions based on how Jaqueline and Christina interact when Christina is in Jaqueline's custody and in Scotland, because Christina has never been in Jaqueline's custody in Scotland. The District Court could not determine Christina's best interests based on hypothetical projections of how she may or may not do in that situation. The District Court ordered that the parties have alternating residential custody. The court then also provided for a subsequent hearing to determine how Christina is faring under these arrangements. This determination is not inconsistent with this Court's order.

term interaction between Jaqueline and Christina. The District Court complied with this Court's April 1995 order to the best of its ability given the limited information currently before it, and we will not remand this matter again to compel the District Court to do otherwise.

Larry also contends that the District court erred in determining that alternating residential custody is in Christina's best interests. He contends that Jaqueline has never had the sole care and custody of Christina at any time in the past and that requiring the child to relocate to Scotland would deprive her of the only home that she has ever known. He argues that such arrangements cannot be in the child's best interest.

It is undisputed that Jaqueline has expressed a consistent and unwavering desire to parent her child. Her difficulties in returning to the United States and establishing a meaningful relationship with Christina were compounded by Larry's interference. However, once Jaqueline returned to the United States, she maintained a- close and loving relationship with Christina until contact was terminated by Jaqueline's involuntary