No. 91-560

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

SHARIE MARIE COGAR,

      Petitioner and Appellant,

  and

NICKEY EUGENE COGAR,

      Respondent and Respondent.



APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed Mc Lean, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Carol J. Everly, Attorney at Law, Missoula, Montana.

      For Respondent:

      F. R. Randy Harrison, Attorney at Law, Missoula,
Montana.


                Submitted on Briefs:  February 13, 1992

                          Decided:  March 24, 1992

Filed:

                          Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Pursuant to their decree of dissolution, Sharie Marie Cogar and Nickey Eugene Cogar were awarded joint custody of their two minor children with Mrs. Cogar as primary caretaker. Subsequently, Mr. Cogar moved for modification of joint custody of the children to sole custody in his care. The District Court for the Fourth Judicial District, Missoula County, entered a temporary custody order granting Mr. Cogar temporary sole custody. The next day, Mrs. Cogar moved to quash the temporary order. The District Court granted her motion and ordered a custody evaluation and a chemical dependency evaluation of Mrs. Cogar. After considering the results of those evaluations and interviewing the children, the District Court issued an order continuing joint custody with Mrs. Cogar as the primary custodian but amending the visitation schedule. Mrs. Cogar appeals from the District Court's order amending the visitation schedule. We affirm.

We restate the issue as follows:

Did the District Court abuse its discretion when it denied the motion for sole custody but modified the existing visitation schedule?

The marriage of Sharie and Nickey Cogar was dissolved on June 2, 1989. The parties agreed to share joint custody of their two minor children with Mrs. Cogar as the primary caretaker. A minimum visitation schedule was agreed to and incorporated into the decree of dissolution. Mr. Cogar's visitation was to include as a minimum: (1) two consecutive days and one over night visit each and

2

every week; (2) alternating weekends commencing at 5:00 p.m. Friday evening and ending at 6:00 p.m. Sunday evening; (3) alternating visitation on the holidays of Memorial Day, Labor Day, Fourth of July, Thanksgiving and Easter. Mrs. Cogar was to have every Christmas and Mr. Cogar was to have every Christmas eve; and (4) Mr. Cogar was to have the children six weeks of the summer beginning one week after school recessed for the summer.

In October of 1989, Mr. Cogar moved the court to modify child custody and name him as primary custodian. He based his motions on allegations that changed circumstances would make it in the children's best interests to reside primarily with him. The court authorized the appointment of a guardian ad litem for the children and ordered that the children undergo an evaluation by counselors at the Mental Health Center.

The children were evaluated by Dr. Sandra Rahrer. Dr. Rahrer recommended that the visitation arrangement then in effect be maintained.

On April 2, 1991, Mr. Cogar filed another motion for sole custody in which he alleged that Mrs. Cogar had been arrested for driving under the influence; that she had no valid driver's license, vehicle license or liability insurance; that she had moved the children five times in a two year period; that she had been treated for alcoholism; and that their son had been retained in kindergarten due to excessive absences.

The District Court issued an ex parte order of temporary custody. The next day, Mrs. Cogar moved the court to quash the

temporary custody order. A hearing was held on April 5, 1991. At the hearing, Judge McLean questioned the children in his chambers as to custody and visitation.

The court granted Mrs. Cogar's motion to quash the temporary custody order. However, it ordered a new custody evaluation and ordered Mrs. Cogar to undergo a chemical dependency evaluation. It further ordered that the parties share the physical custody of their children on a weekly basis -- one parent would keep the children for one week and then alternate so that the other parent would keep the children for one week.

A follow-up hearing was held on August 21, 1991, in which the court considered the results of the custody evaluation done by Dr. Philip Bornstein and Dr. Marcy Bornstein. Some of the Bornsteins' conclusions follow:

> 4. Emotionally, [the children] are in need of nurturance, affection, understanding, and a reduction of interparental judgmental attitudes. To best accomplish this, they must be assured of continuing contact with both parents.

> . . .

> As evaluators, we have considered the best interests of the minor children by evaluating their desires, the desires of their parents, the childrens' relationship to each parent, and the childrens' current adjustment to home, school, and community. Indeed, reviewing all data presented above, this examiner finds that the awarding of joint custody continues to be in the best interests of [the children].

> . . .

> 6. Thus, given the above findings, this examiner believes there is little reason to change the visitation schedule as originally prescribed in the June 2, 1989 Decree of Dissolution. . . .

8. Mr. and Mrs. Cogar should agree upon the following:

A. The sharing of time with children during holidays, vacations, etc., <u>should be as equal as possible</u>.

B. Once a schedule is put into effect, that schedule should be followed as closely as possible.

. . .

<u>Regardless of residential plan, the principle of joint custody provides assurance that both parents can remain significantly involved in all substantive matters that have impact upon the children</u>. (Emphasis added).

After considering the Bornsteins' evaluation, the District Court decided to have the parties follow the residential plan known as the "Ackerman Plan". The court described the plan as follows:

THE COURT: It is known as the 9/4 (sic), 10/5 (sic) Plan. Sharie will have the children during the school year on a 9/5 basis. During the summer, Nick will have the summer on a 10/4 basis. You can take a look at this plan and draw it up.

The 9/5 plan during the school year means that Sharie will have the children nine out of fourteen days and Nick will have them five out of the fourteen days. During the summertime that changes to where Nick has the children ten days out of the fourteen and Sharie has them four days out of the fourteen.

The way it works is on the 9/5 plan, he will have theme, like, three days one week and two days the next, or four days one week and one week the next. He will have them Thursday, Friday, Saturday, and Sunday of one week. The following week he will have them on a Saturday.

Sharie will have them the remainder of the time. During Christmas vacation he will have them for two weeks; during Thanksgiving and Easter vacation he will have them one week. During the summer months -- summer means it begins the day after school gets out and ends the day before school starts -- Nick will have the children ten out of every fourteen days, with Sharie having the children for a three-day weekend one week and overnight the alternate week.

5

> The way this will end up is Sharie will wind up with the children approximately twenty days more per year than Nick will have, when it all comes out in the wash. This plan is meant to address the jumping back and forth where we are talking about the stability for the child's benefit.

Mrs. Cogar appeals from the District Court's imposition of the Ackerman plan.

Did the District Court abuse its discretion when it denied the motion for sole custody but modified the existing visitation schedule?

In his motion to modify custody dated April 2, 1991, Mr. Cogar sought to be awarded the sole custody of his children pursuant to § 40-4-219, MCA. That motion was denied by the District Court. Instead, the District Court modified the visitation time that the parents spent with their children. Mrs. Cogar maintains that since a change in visitation time was not the issue before the court, it erred in modifying it. She maintains that the District Court would have had to have shown serious endangerment to the children before it could modify visitation.

Mr. Cogar maintains that a change in visitation time does not amount to a change in "custody" under § 40-4-219, MCA, when the parties retained joint custody. We agree.

Section 40-4-219, MCA, provides that the court may in its discretion modify a prior custody decree if it finds (1) that a change has occurred in the circumstances of the child and that the modification is necessary to serve the best interest of the child; and (2) if it further finds that the child's present environment endangers seriously his physical, mental, moral, or emotional

6

health and the harm likely to be caused by a change of environment is outweighed by its advantages to him. After considering custody evaluations, the children's wishes and a chemical dependency evaluation, the District Court determined that it was in the best interest of the children to continue joint custody. In the same order, the District Court modified the visitation schedule by instigating the Ackerman Plan of visitation.

As evidenced by the statutes, custody and visitation are not the same thing. Under § 40-4-218, MCA, the custodian has the right to determine the child's upbringing, including his education, health care and religious training, unless there is a specific limitation on his authority. We are not dealing with an issue of custody here but rather an issue of visitation. Under the provisions of § 40-4-217, MCA, a parent not granted custody of a child is entitled to reasonable visitation rights and the district court may modify "visitation rights whenever modification would serve the best interest of the child[ren]". The statute further provides that "the court may not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health".

The District Court here concluded that joint custody was still appropriate and continued the original joint custody provision. The court did not restrict either parent's visitation. The court stated that the Ackerman Plan was meant to "address the jumping back and forth where we are talking about the stability for the child's benefit." The court further stated: "I have read the

7

children's feelings. I'm doing what I think is in the best interests of the children." Acting under the specific provisions of § 40-4-217, MCA, the District Court modified the visitation plan. We hold that the District Court did not abuse its discretion in the modification of the visitation plan.

_____
                                              Justice

We Concur:

_____
        Chief Justice

_____

_____
          Justices

8

Justice Karla M. Gray, dissenting.

I respectfully dissent from the majority opinion.  It is my view that the District Court abused its discretion in imposing a significantly revised visitation schedule where neither party requested modification of visitation and no evidence on the record supports the court's action.

The majority correctly notes that the District Court imposed the "Ackerman Plan" subsequent to an August 21, 1991, hearing and that the court states that it considered the results of the custody evaluation done by Drs. Bornstein.  The District Court did not cite to the Bornstein report, however, in support of its imposition of the new visitation schedule; the majority attempts to do so to avoid finding an abuse of discretion.

It is my view that the majority's efforts in this regard are in error, as a clear reading of the report and the majority's quotations from it indicate.  First, the cited portions relating to continued contact with both parents and continued joint custody being in the best interests of the children have nothing whatsoever to do with the matter of substantially revising the visitation schedule.  Next, the majority quotes, but does not highlight the Bornsteins' conclusion that "there is little reason to change the visitation schedule as originally prescribed. . . ."  The majority goes on to quote the Bornsteins' recommendation that **holiday** and **vacation** time should be shared "as equal as possible."  It is important to note the limited scope of this recommendation; no recommendation is made that **all** of the children's time be shared as

9

equally as possible (which is the ultimate result of the court's imposition of the "Ackerman Plan"), but only that **vacation** times be so shared. Finally, the majority highlights a statement from the Bornsteins' report relating only to the importance of continuing joint custody, which was the question before the District Court, and not to revising the visitation schedule. Absolutely nothing in the Bornsteins' report supports the court's imposition of the "Ackerman Plan."

The majority then goes on to quote from the District Court's explanation of that Plan, including the notion that the "plan is meant to address the jumping back and forth where we are talking about the stability for the child's benefit." A more "jumping back and forth" schedule disruptive to the children's stability, particularly in light of the recommendations from the Bornsteins, hardly can be imagined.

I agree with the majority that, pursuant to § 40-4-217(3), MCA, a court can modify visitation rights when it "would serve the best interest of the child[ren]." Nothing on the record before the District Court or this Court supports the notion that the imposed visitation plan is in the children's best interest; nor does the District Court make any findings regarding the children's best interests insofar as this visitation plan is concerned.

I would hold that the District Court abused its discretion.

_____
Justice