No. 93-384

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE MARRIAGE OF

JEROME ALLEN JOHNSON,

      Petitioner and Appellant,

  and

BARBARA A. JOHNSON,

      Respondent and Respondent.

FILED

AUG 12 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Ann L. Smoyer, Smoyer Law Firm,
          Helena, Montana

      For Respondent:

          Jon A. Oldenburg, Attorney at Law,
          Lewistown, Montana

Submitted on Briefs:  March 10, 1994

Decided:  August 12, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Respondent Barbara A. Johnson moved the District Court for the Tenth Judicial District in Fergus County to amend her prior decree of dissolution by transferring physical custody of her two children from her former husband, Jerome A. Johnson, to her. After a hearing at which testimony was taken and other evidence received, the District Court adopted Barbara's proposed findings of fact and conclusions of law and entered judgment in her favor granting to her physical custody of her two children and providing Jerome with reasonable rights of visitation. Jerome appeals from the judgment of the District Court. We reverse.

We restate the issues on appeal as follows:

1. When a party to a former dissolution proceeding moves to amend the decree in a way that substantially changes the residential living arrangements of the former couple's children without seeking a change in the legal designation of "joint custody," is the District Court's decision governed by the "best interest" standard found at § 40-4-212, MCA, or by the "serious endangerment" standard found at § 40-4-219(1)(c), MCA?

2. Applying the proper standard for modification of residential custody, was there sufficient evidence to support the District Court's judgment modifying its original decree?

FACTUAL BACKGROUND

Jerome and Barbara were married on July 6, 1983. During their marriage, Barbara gave birth to two daughters. Jennifer was born on October 31, 1983, and Amanda was born on February 27, 1987.

2

They were 9½ and 6 years old respectively at the time of the hearing held pursuant to Barbara's motion to amend the court's decree.

On June 20, 1990, this couple filed a joint petition for dissolution of their marriage. In their petition, they stated that they had entered into a property settlement agreement and child custody agreement, and asked that it be adopted by the court. With regard to child custody, the parties indicated in their agreement that they were both fit and proper persons to be granted care and custody of their children, and therefore, petitioned for joint custody. However, they also agreed that Jerome was to be awarded physical custody, care, and control of the two children, and that Barbara was entitled to reasonable visitation. Under the terms of the agreement, Barbara incurred no obligation for child support, and in fact, made no child support payments during the time that the children resided with Jerome.

On June 20, 1990, the District Court entered its decree dissolving the couple's marriage. The decree incorporated the couple's property settlement and child custody agreements.

At the time of their dissolution, and during their entire marriage, Jerome and Barbara lived in Roy. Following the dissolution of their marriage, Barbara moved to Billings, where she enrolled in college. The children resided with Jerome for nine months during the school year, and with Barbara during the three months of summer. During the school year, Barbara exercised visitation with the children on alternate weekends.

3

Barbara did not complete her college education, but after two years, moved from Billings to Lewistown where, at the time of the hearing, she was employed as a manager-trainee at the local Kentucky Fried Chicken restaurant.

On August 6, 1992, Barbara moved the District Court to amend its original decree by providing her with physical custody, care, and control of her children, and providing Jerome with reasonable rights of visitation. In support of her motion, she filed an affidavit in which she stated that the parties' circumstances had changed because she was no longer attending school; that the children's best interests would be served by changing their living arrangements; and that due to their current living arrangements, their physical and emotional health was seriously endangered.

On April 7, 1993, the District Court heard evidence in support of and in opposition to Barbara's motion. Twelve witnesses testified, in addition to the parties. However, the District Court did not interview either of the children to consider their preferences for a parent with whom to reside. Barbara conceded that at least the older daughter was torn between her loyalties to both parents, and that the younger daughter was not yet mature enough to express a reasoned preference.

On April 26, 1993, the District Court adopted those findings of fact and conclusions of law which had been proposed by Barbara's attorney, and on June 23, 1993, the District Court granted Barbara's motion by entering judgment which continued joint legal custody, but designated Barbara as the residential custodian, and

4

granted Jerome reasonable visitation rights. In its findings of fact, the District Court found that circumstances had changed since the entry of the original decree because Barbara was now employed and had a home where she could care for her children. The District Court also found that the environment in which the children resided with Jerome endangered their physical, mental, moral, and emotional health, and that modification was necessary to serve their best interests. The District Court held, in other words, that modification was justified under either the "best interest" test set forth in § 40-4-212, MCA, or the "serious endangerment" test set forth in § 40-4-219, MCA.

On appeal, Jerome argues that since the physical custody and visitation arrangements were completely reversed from the original decree to the amended decree, the District Court's decision, in substance, changed actual custody of the children, and therefore, should have done so only if the "serious endangerment" standard set forth in § 40-4-219, MCA, was satisfied. Furthermore, Jerome argues that whether the "best interests" of the children are considered, or the "serious endangerment" standard, there was insufficient evidence to support the District Court's decision transferring physical custody of the children from him to Barbara.

Barbara responds that since no change was made in the joint custody provided for in the original decree that the "best interest" test provided for in § 40-4-212, MCA, applies. Barbara also responds that whichever test for modification is applied,

5

there was sufficient evidence to support the District Court's decision.

## ISSUE 1

When a party to a former dissolution proceeding moves to amend the decree in a way that substantially changes the residential living arrangements of the former couple's children without seeking a change in the legal designation of "joint custody," is the District Court's decision governed by the "best interest" standard found at § 40-4-212, MCA, or by the "serious endangerment" standard found at § 40-4-219(1)(c), MCA?

The District Court drew no conclusion about whether its decision was controlled by §§ -212 or -219. It merely found sufficient evidence to satisfy either criteria for modification, and therefore, granted Barbara's motion. However, before we can review the sufficiency of the evidence in support of the District Court's judgment, it is necessary to clearly establish what Barbara's burden was in order to accomplish the modification she sought.

Since our prior decisions are not necessarily consistent with the statutory scheme for modification, nor with each other, it is appropriate to review those statutes, and our cases interpreting them, before arriving at our conclusion.

Section 40-4-212, MCA, provides that when a district court makes its original determination regarding child custody, it shall do so in accordance with the "best interest of the child." However, recognizing that children's "best interests" are served by

6

continuity and stability in their living arrangements, the Legislature also provided that once custody was established by the district court, it could not be modified unless (1) a change has occurred in circumstances which make modification necessary in order to serve the child's best interest, and further, that one of several additional factors are found to exist. The additional factor relevant to this case is that (2) "the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change in environment is outweighed by its advantages to him . . . ." Section 40-4-219(1)(c), MCA.

Both §§ -212 and -219 were taken from the Uniform Marriage and Divorce Act and were adopted in Montana in 1975.

In 1981, the Legislature amended Montana's laws regarding child custody by adding §§ 40-4-222 through -224, MCA. These sections were not taken from the Uniform Marriage and Divorce Act, but are instead based on §§ 4600 and 4600.5 of the California Civil Code. Section 40-4-222, MCA, declared the Legislature's intent to "assure minor children frequent and continuing contact with both parents after the parents have separated or dissolved their marriage" and that where in the best interest of the child, joint custody should be awarded to accomplish that purpose. Section 40-4-224(1) and (2), MCA, provides that "[u]pon application of either parent . . . the court shall presume joint custody is in the best interest of a minor child" and that "[t]he allotment of time between the parents must be as equal as possible; however: (a) each

7

case shall be determined according to its own practicalities, with the best interest of the child as the primary consideration . . . ."

Subparagraph (3) of § -224 provides that "[a]ny order for joint custody be modified pursuant to 40-4-219 to terminate the joint custody."

While § -224 provided that the allotment of time between parents must be based on the best interest of the child, it set forth no separate standard for modifying the allotment of time provided for in the original decree. Subparagraph (3) provides that a joint custody order may be modified pursuant to § -219, but is not a model of clarity and appears to refer to modifications which are for the purpose of terminating joint custody. Therefore, in a series of cases, this Court has reasoned that when a party seeks to modify a joint custody arrangement by terminating joint custody, he or she must satisfy the standards set forth in § -219, but that where a party seeks to modify physical custody arrangements without terminating the legal designation of joint custody, the "best interest" test applies based on the provisions of § -224(2). *See In re Marriage of Paradis* (1984), 213 Mont. 177, 689 P.2d 1263; *In re Marriage of Bergner* (1986), 222 Mont. 305, 722 P.2d 1141; *In re Marriage of Stephenson* (1988), 230 Mont. 439, 750 P.2d 1073; *In re Marriage of Johnson* (1989), 238 Mont. 153, 777 P.2d 305; *In re Marriage of Keil and Ferguson* (1990), 246 Mont. 344, 805 P.2d 1334; *In re Marriage of Mitchell*

8

(1991), 248 Mont. 105, 809 P.2d 582; *In re Marriage of Cogar* (1992), 252 Mont. 272, 828 P.2d 1361.

The rationale in our earlier decisions seems to be that § 40-4-219(1)(a)-(f), MCA, lists the jurisdictional prerequisites only for modification of sole custody disputes, but that motions for a different physical custody arrangement without terminating "joint custody" must apply the "best interest test" because § 40-4-224(2), MCA, requires that the allotment of time between parties in a joint custody arrangement be based on the child's "best interest." Our prior decisions fail to point out that sole custody, pursuant to § -212, must also be based on a child's "best interest." Furthermore, our prior decisions failed to explain why the rationale for applying § -219 for modification of sole custody is not equally applicable to a substantial change in physical custody arrangements. We pointed out in *Bergner*, 722 P.2d at 1144, that "the stability of a child's home life is vital to his or her well-being."

Certainly a child's sense of continuity and stability are equally threatened when that child is uprooted from the only community in which that child has ever resided and relocated in a new household and new school, whether we refer to the change as one of legal custody or merely physical custody.

Some of our decisions have recognized that the substance of the change which is sought is more important than what it is called in the parties' pleadings.

9

For that reason, in *In re Marriage of Gahm* (1986), 222 Mont. 300, 722 P.2d 1138, we construed the relief sought by the husband to be a termination of joint custody, even though his formal pleadings sought only modification of physical custody. We stated:

> Here, the appellant's request is different than that made in *Paradis*. This appellant requested "permanent custody" of the children with "limited rights of visitation" to respondent. This is more than a request for different physical custody arrangements like the request in *Paradis* and does not concern the integration standard. Asking that respondent be allowed only limited visitation is equivalent to asking for sole custody.

*Gahm*, 722 P.2d at 1140.

In discussing the importance of applying the "serious endangerment" standard to modification of a custody decree, we stated:

> Subsection (c) is a jurisdictional prerequisite to modification of a custody decree. *In re Custody of Dallenger* (1977), 173 Mont. 530, 534, 568 P.2d 169, 172. The rationale for placing this heavy burden on the moving party is to preserve stability and continuity of custody for children. *Dallenger*, 173 Mont. at 533, 568 P.2d at 171. This policy does not change merely because the moving party uses a different label in his prayer for relief. The express purpose of the joint custody provisions are to assure a child frequent and continuing contact with each parent and to allow each parent to share the rights and responsibilities of raising the child. When one parent seeks to become permanent custodian and to relegate the other parent to limited visitation, the proposed arrangement is no longer joint custody. That parent should carry a heavy burden of proof before the court imposes such a change on a child.

*Gahm*, 722 P.2d at 1140-41.

Likewise, in *Stephenson*, we held that in deciding which standard to apply to a motion for modification of a child's physical custody arrangements, we would look to the substance of the change sought,

10

rather than the form of the party's motion. In that case, although the parties had been awarded joint custody of their children, the husband sought a modification of the original decree which would make him the domiciliary parent. Although we held that "best interest" was all that had to be established to modify physical custody, when termination of joint custody was not sought, we also held that:

> [W]here modification equates to termination of the joint custody, the lower court should proceed according to the requirements of § 40-4-219, MCA. See *In re the Marriage of Gahm and Henson* (1986), [222 Mont. 300, 302,] 722 P.2d 1138, 1140.

*Stephenson*, 750 P.2d at 1077. After analyzing the change sought by the husband, we held that:

> We agree with Sandra's assertion that the lower court's modification amounted to termination of the parties' joint custody arrangement. The modified decree awarded physical custody to Andrew and granted Sandra reasonable visitation conditioned on reasonable prior notice and abstention from alcohol. This was a significant change for the children. The original decree granted Sandra physical custody and Andrew received liberal visitation rights. . . . Under these circumstances, the lower court's modification terminates the joint custody established by the first decree because the change amounts to "more than a request for a different physical custody arrangement like the request in *Paradis* and does not concern the integration standard." *Gahm*, 722 P.2d at 1140. And where "one parent seeks to become permanent custodian and to relegate the other parent to limited visitation, the proposed arrangement is no longer joint custody." *Gahm*, 722 P.2d at 1141. Thus we hold that § 40-4-219, MCA, applies, and we reverse for lack of a proper endangerment finding.

*Stephenson*, 750 P.2d at 1077-78.

In summary, our prior decisions have held that where one party to a dissolution moves or petitions to modify a sole custody

11

provision in the dissolution decree, then that party must satisfy the jurisdictional requirements of § 40-4-219, MCA. However, if the original decree provided for joint custody and the motion to modify does not attempt to terminate joint custody, but simply alter the physical custody arrangements, the district court should consider the motion in light of the best interest standard established by § 40-4-212, MCA. We have carved out an exception to the previous two rules where the form of a party's pleading asks for a modification of physical custody, but in essence terminates joint custody.

Considering our statutory scheme for modification of custody arrangements, and the rationale for requiring a substantial showing before altering the living arrangements to which a child has become accustomed, and out of concern that the applicable standard for granting a motion to modify custody arrangements is not clear from our prior decisions, we adopt the following standard:

Motions or petitions to modify a sole custody provision or terminate a joint custody provision must satisfy the jurisdictional prerequisites set forth in § 40-4-219, MCA. Likewise, a motion or petition to modify child custody provisions in a dissolution decree which have the effect of substantially changing the primary residence of the parties' children, even though the formal designation of "joint custody" is retained, are to be construed as motions or petitions to terminate joint custody and must satisfy the jurisdictional requirements set forth in § 40-4-219. MCA. Any effort to modify the physical custody arrangements in a decree

12

which provided for joint custody, which does not seek a substantial change in the children's primary residence, may be considered by the district court according to the best interest standard set forth in § 40-4-212, MCA.

We conclude that this approach is most consistent with the plain terms of Montana's Marriage and Divorce Act and is most likely to provide for the continuity and stability of children's living arrangements that the Legislature obviously determined to be important when it adopted that Act.

## ISSUE 2

Applying the proper standard for modification of residential custody, was there sufficient evidence to support the District Court's judgment modifying its original decree?

> [T]he party requesting modification under § 40-4-219, MCA, bears a heavy burden because the statute's policy is to "preserve stability and continuity of custody for the children." *Gahm*, 722 P.2d at 1140.

*Stephenson*, 750 P.2d at 1078.

> When reviewing findings regarding modification of custody, this Court will not reverse the findings unless they are clearly erroneous. *In re Marriage of Arbuckle* (1990), 243 Mont. 10, 13, 792 P.2d 1123, 1124. A finding is clearly erroneous only if it is not supported by substantial evidence, the trial court has misapprehended the effect of the evidence, or a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

*In re Marriage of McClain* (1993), 257 Mont. 371, 374, 849 P.2d 194, 196.

In support of her contention that her children's health was seriously endangered by residing with their father, Barbara offered the following evidence:

13

1. She testified that when the girls arrived at her home for visitation they were inadequately clothed and that she had to purchase clothes for them.

2. She testified that on at least one occasion Jerome had left the children while he and his companion went out and that while gone he had turned off the telephone so that they could not make outgoing calls.

3. Barbara complained that the girls lacked supervision, as evidenced by the fact that they were allowed to remain at school until about 5:00 or 5:30 p.m.

4. She complained that the girls' medical care was neglected; however, the only example given was Jerome's failure to replace Jennifer's glasses for three months after they had been lost. In a related complaint, she reported that when Amanda was taken to Billings for a minor surgical procedure Barbara had not been advised of the time and date ahead of time.

5. Barbara was also concerned that Jerome had not continued the girls' religious education which she had begun prior to the dissolution of their marriage.

While Barbara had other minor complaints about her relationship with Jerome, as it affected the girls, the complaints listed formed the basis of her contention that her daughters' health was endangered by living with her former husband. On the other hand, she acknowledged that the girls feel comfortable at and get along well in school. She conceded that Jerome did not have a drinking problem and she was willing to provide him with three

14

months of visitation during the summer. She also conceded that she had paid no child support to Jerome for the care of their daughters since the couple's marriage had been dissolved.

In response to Barbara's accusations, Jerome pointed out that he stopped sending the girls' good clothes with them when they visited their mother because she kept the good clothes and only returned the ones of poorer quality. However, he denied that the girls looked like "orphans," as their mother described them when they arrived for visitation. He testified that his daughters are required to be home for dinner at 5:00 every night and that they often remain at school until then, but pointed out that the school is, at most, one-half block away, and that he can see his daughters from his window while they play on the playground. He denied that his daughters had terminated their religious education, and pointed out that they had gone to church school the day before the hearing. He explained that he had attempted to call Barbara about Amanda's operation two days beforehand, but was unable to reach her. He acknowledged, however, that he did not bother to leave a message on her answering machine. None of Jerome's testimony was rebutted.

Only two witnesses were called to testify regarding Jennifer's and Amanda's progress at school. Peg Rogers works for the Head Start Program in Roy and had Amanda in her course the previous year. She described her as bright, cheerful, and happy, and said that her hygiene and health habits were very good. She described her as always well dressed, neat, and clean. She described Jerome as a loving father who was involved in his children's school work

15

and an active participant in the school. She could think of no reason why his children would be better off living somewhere else.

William Walker was the superintendent of schools at Roy during the year prior to trial, and knew both Johnson girls. He was also the principal of kindergarten through twelfth grade and saw Jennifer daily during the previous school year. He described her as well adjusted and happy to be at school. He said she did better than average academically. He also said that she dressed normally, was well groomed, and was aware of no problems in her home. He testified that Jerome always attended parent-teacher conferences, and had made an impression on him because generally he had a difficult time getting parents to attend.

Tony LeRette is Barbara's 19-year-old brother, but had continued to live with Jerome for nearly a year after the couple separated. He lived there because his parents lived elsewhere and he wanted to complete high school in Roy. He described Jerome as a good parent who adequately cared for the girls and always knew where they were. He considered Jerome watchful and protective, and thought that the household and community in which the girls were being raised was a good place for them and a friendly environment. He could think of no reason why the children should be moved.

In summary, it appears from the record that Barbara's and Jerome's poor relationship has led to several decisions which have not been in the best interests of their children. For example, it is clear that these children would be better off if their parents were able to work out an agreement regarding the exchange of their

16

clothing, were able to better communicate regarding their medical care, and were able to agree on the appropriate religious instruction for their daughters. In the absence of better communication between the parties, perhaps this is an appropriate area for the District Court to establish more specific guidelines for the benefit of the children. However, we conclude that the evidence offered by Barbara does not establish that the children's environment in Jerome's home seriously endangered their physical, mental, moral, or emotional health. Therefore, we conclude that there was not substantial evidence to satisfy the jurisdictional prerequisite in § 40-4-219(1)(c), MCA, and that the District Court, therefore, erred by substantially altering the custodial arrangements provided for in its original decree.

The judgment of the District Court is reversed and this case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

17

Karla M. Gray

Justices

August 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Ann L. Smoyer, Esq.
Smoyer Law Firm
1085 Helena Ave.
Helena, MT 59601

Jon A. Oldenburg
Attorney at Law
309 Bank Electric Bldg.
Lewistown, MT 59457

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy