NO.   94-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

DAN E. WIEDRICK,

                Petitioner and Appellant,

        and

SUSAN LEE WIEDRICK,

                Respondent and Respondent.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Hon. Maurice R. Colberg, Jr., Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Virginia A. Bryan; Wright, Tolliver and Guthals
                Billings, Montana

        For Respondent:

                Kevin T. Sweeney; Sweeney & Healow, Billings,
                Montana


                        Submitted on Briefs:  December 15, 1994

                                    Decided:  January 18, 1995

Filed:

_____
                    Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Dan E. Wiedrick appeals from the denial of his motion to modify custody of his minor son by the Thirteenth Judicial District court, Yellowstone County. We affirm.

The District Court dissolved Dan and Susan Wiedrick's marriage on September 14, 1990. The decree of dissolution incorporated Dan and Susan's custody agreement concerning their minor child, Justin, born October 31, 1987. The parties shared joint legal custody of Justin and, indeed, joint physical custody, with Justin alternating weeks with his father and mother. The agreement recognized that a different custody and visitation arrangement might be necessary when Justin enrolled in kindergarten.

Justin began kindergarten in the autumn of 1993 and Dan and Susan were unable to agree on a new custody and visitation arrangement. As a result, Dan moved to modify the custody portion of the dissolution decree to have himself designated as Justin's principal residential custodian.

The District Court held a hearing on Dan's motion. Testimony was presented by both Dan and Susan and a court-ordered investigatory report from the Yellowstone County Court Services Office was admitted into evidence; that report recommended that Susan be named Justin's residential custodian. Following the hearing, the District Court maintained joint legal custody of Justin in Dan and Susan and determined that Justin's best interests required that Susan be designated his primary residential

2

custodian. Dan appeals.

District courts are specifically authorized to modify joint custody arrangements under the "best interests of the child" standard, so long as joint custody is not being terminated. Section 40-4-224, MCA; In re Marriage of Johnson (Mont. 1994), 879 P.2d 689, 693, 51 St.Rep. 703, 706. Section 40-4-212, MCA, sets forth the factors to be considered in determining the best interests of the child. In this case, the District Court considered each of the statutory factors and made comprehensive written findings thereon. We review a court's findings regarding modification of custody under the clearly erroneous standard; a finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Marriage of Johnson, 879 P.2d at 694.

In reaching its decision that Susan should be named as the residential custodian, the District Court relied on the court-ordered investigatory report, expert testimony from Jim Paulsen, a licensed clinical social worker, and Ned Tranel, a psychologist, who had counseled Dan, Susan and Justin at various times over the past four years, and testimony from Dan and Susan. It is clear that the court's findings are supported by substantial credible evidence and Dan does not argue otherwise.

Dan asserts that the District Court's findings are tainted by gender-based expectations for male behavior. Dan relies on three

3

quotes from the District Court's findings of fact and the concurring opinion in In re Marriage of Davies (Mont. 1994), 880 P.2d 1368, 51 St.Rep. 929, as support for his position.

Dan's first allegation of gender bias concerns the court's finding that he showed inappropriate emotion during custodial exchanges with Susan. Dan points specifically to language in the findings that he expressed "inappropriate . . feelings, crying, etc. " He alleges that this demonstrates the District Court's gender bias against men who cry or express emotion. We do not agree.

Dan's argument ignores both the context of the District Court's finding and related expert testimony. The court found that Dan expressed inappropriate emotions in relation to the parties' weekly exchange of Justin. Testimony indicated that, during some of these exchanges, Dan would cry openly in front of Justin while Susan was picking the child up; Justin would then become upset and resist leaving his father. Expert testimony indicated that Justin's reaction was most likely an attempt to please Dan, and that Dan's emotional outbursts could pose an emotional problem for Justin. Thus, the District Court found Dan's expressions of emotion inappropriate, not because of his male gender, but because of the impact such expressions could have on the minor child. Based on the record before us, the District Court's finding was clearly a parental-role-related concern, not a gender-based one.

Dan's second assertion of gender-based error concerns the court's finding that he was inappropriately dependent on his

4

family. Dan argues that the District Court's comments about his dependency on his family reflect the gender-based axiom that "a daughter is a daughter all of her life, but a son is a son until he takes a wife."

At the hearing, psychotherapist Jim Paulsen, who had counseled both Dan and Susan, opined that Dan's relationship with his family evidenced enmeshment, defined as an unhealthy dependency upon family members. Paulsen testified that Dan's enmeshment with his family kept him from meeting Susan's emotional needs during their marriage and could prevent him from acting in Justin's best interests. The record is clear that enmeshment relates to Dan's parenting skills. Thus, the District Court's finding that such dependency would not serve Justin well is based not on gender bias, but on substantial credible evidence.

Dan's final assertion of gender-based error relates to the District Court's finding that Susan is the more independent and self-sufficient parent, with a greater earning capacity and more dependable working schedule. Dan postulates that the District Court's reliance on these factors demonstrates the court's gender bias that men are expected to be the "breadwinners."

Dan's argument, however, ignores the logic and common sense these facts play in protecting Justin's best interests. Susan's predictable 8:00 a.m. to 5:00 p.m. working arrangement would be more conducive to a regular schedule for Justin than Dan's, which fluctuates depending upon the season, the job, and the physical location of his construction work. Such a determination by the

5

District Court has nothing to do with gender, and everything to do with Justin's well-being.

Finally, Dan relies on the specially concurring opinion in Marriage of Davies, which stated that:

> Article II, Section 4 of our Montana Constitution recognizes and guarantees the individual dignity of each human being with regard to gender. Every attorney and every judge in Montana is sworn to uphold that constitutional right. There is simply no justification for interjecting gender bias and sexual stereotyping into any legal proceeding in this state. It is morally wrong; it violates the constitution; it will not be tolerated.

Marriage of Davies, 880 P.2d at 1377-78. The concurring opinion was based on the district court's physical description of the spouse in the context of a distribution of the marital estate; such a description did not and could not relate to the issue before the court and could only be seen as unacceptable gender bias and sexual stereotyping.

Here, as discussed above, no gender bias is evident in the court's findings. The language of which Dan complains relates directly to important and appropriate considerations in determining a child's best interests.

We conclude that the District Court's findings were supported by substantial credible evidence and are not otherwise erroneous. We hold, therefore, that the District Court did not err in denying Dan's motion.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document

with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company

_____
                                                              Justice

We concur:

_____
                 Chief Justice

_____

_____
                 Justices

7

January 18, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Virginia A. Bryan, Esq.
Wright, Tolliver and Guthals
P.O. Box 1977
Billings, MT 59103

Kevin T. Sweeney, Esq.
Sweeney & Healow
1250-15th St. W., Ste. 202
Billings, MT 59102

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy