NO.   94-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

JULIE RIES KESSLER,

     Petitioner  and Appellant,

  and

ARLEN JOHN KESSLER,

     Respondent  and Respondent.

FILED

SEP 03 1995

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
             In and for the County of Lewis and Clark,
             The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

       Charles E. Petaja, Attorney at Law,
       Helena,  Montana

     For Respondent:

       Mark P. Yeshe, Attorney at Law,
       Helena,  Montana


               Submitted on Briefs:   July 27, 1995

                   Decided:   September 8, 1995

Filed:

_____
        Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The respondent, Arlen John Kessler, filed a motion in the District Court for the First Judicial District in Lewis and Clark County in which he asked the court to reallocate physical custody of his and petitioner Julie Ries Kessler's children, and for a restraining order prohibiting Julie from removing the children from Montana. The court granted Arlen's motion and Julie appeals. We affirm the order of the District Court.

Although a number of issues are raised in Julie's brief, we conclude that the dispositive issue on appeal is whether the District Court erred when it found that it was in the children's best interests that the prior custody arrangement should be modified and residential custody awarded to Arlen during the school year.

### FACTUAL BACKGROUND

Julie Ries Kessler and Arlen John Kessler were married on June 20, 1981. During the course of their marriage, Julie and Arlen had two children, Jennifer Lynn, who was born on October 16, 1984, and Nicholas John, who was born on December 19, 1987. On July 11, 1990, Julie and Arlen filed a petition for dissolution. In that petition, Julie and Arlen agreed that it was in the best interests of their children that they share joint custody of Jennifer and Nicholas in accordance with the marital and property settlement agreement drafted by Julie and Arlen.

The agreement provided that Jennifer and Nicholas would reside with one parent for two weeks, and then reside with the other parent for two weeks. The non-residential parent would be permitted visitation on two nights per week. The agreement also provided that Julie and Arlen would carefully monitor the custody schedule in order to ensure that it remained in Jennifer's and Nicholas's best interests. In the event of problems with the residential arrangement, the agreement provided that Julie and Arlen would seek professional consultation and renegotiate a new arrangement. The final decree of dissolution incorporated the terms of the agreement.

Sometime after the dissolution, Julie's job was terminated. To qualify herself for new employment, Julie enrolled in the University of Washington's masters degree program for social work. Thereafter, Julie notified Arlen in writing that she, Jennifer, and Nicholas were moving to Bothell, Washington, a Seattle suburb.

Arlen opposed the move and ultimately filed a motion for reallocation of physical custody and for restraining order in which he asked the District Court to award him primary residential custody of Jennifer and Nicholas and restrain Julie from removing the children from Montana until the court could make a custody determination. In the motion, Arlen specified that since the dissolution the shared custody arrangement had worked well for Jennifer and Nicholas, and that he did not believe the move to Bothell would serve the children's best interests because they had

3

lived their entire lives in Helena, had attended Helena schools, have relatives in Helena, and get along very well with Arlen's new wife, Janet. Arlen also stated in the motion that he had a close relationship with Jennifer and Nicholas and that their best interests would be served if they lived with him in Helena and maintained visitation with Julie "at all reasonable opportunities."

Julie filed an affidavit and memorandum in opposition to Arlen's motion in which she stated that both Arlen and she loved their children and were good parents, that they had shared physical custody, but that she was the primary residential custodian because she had the children more often than Arlen had them. Julie also stated that the move to Bothell would serve Jennifer's and Nicholas's best interests because they would not have to adjust to living with their stepmother and her twelve-year-old daughter.

The District Court conducted a hearing at which evidence in support of and in opposition to Arlen's motion was considered. Tom Walstad, a psychotherapist who performed a custody evaluation, testified that Julie and Arlen were equally adequate as parents and that they both loved and provided for their children very well. Mr. Walstad ultimately presented three options the court could adopt: (1) have the children live with Julie; (2) have the children live with Arlen; or (3) split custody by having Nicholas live with Arlen and Jennifer live with Julie. Neither Julie nor Arlen assented to split custody. Mr. Walstad did not recommend a custody arrangement to the District Court.

After considering the evidence, the District Court issued its findings of fact, conclusions of law, and order in which it found that both Julie and Arlen were equally qualified to serve as parents, and that Jennifer and Nicholas were equally bonded to Julie and Arlen. However, the court found that up to that point Jennifer and Nicholas had grown up in Helena and were established in the community and their school, that Julie's work and school schedule placed a burden on her ability to spend time with them, and that Julie was not sure where she would live after completing her degree program.

The court concluded that Jennifer's and Nicholas's best interests would be best served by granting Arlen primary residential custody during the school year and Julie residential custody during the summer, and therefore, that modification of the residential custody arrangement was appropriate pursuant to § 40-4-219(1)(f), MCA. The court noted that such an arrangement would best "assure continuity and stability in [Jennifer's and Nicholas's] lives with a minimum of disruption." However, the court permitted Julie to request a review of the custody order after receiving her degree. Julie appeals the District Court's order.

## DISCUSSION

Did the District Court err when it found that it was in the children's best interests that the prior custody arrangement should

be modified and residential custody awarded to Arlen during the school year?

We review a district court's findings of fact regarding custody modification and visitation to determine whether the district court's findings are clearly erroneous. *In re Marriage of Elser* (Mont. 1995), 52 St. Rep. 434, 436 (citing *In re Marriage of Johnson* (1994), 266 Mont. 158, 166, 879 P.2d 689, 694). Findings of fact are clearly erroneous if: they are not supported by substantial evidence; the district court misapprehends the effect of the evidence; or, we are convinced upon reviewing the record that the district court made a mistake. *Marriage of Elser*, 52 St. Rep. at 436 (citing *Marriage of Johnson*, 879 P.2d at 694) We will review a district court's decision to modify custody or visitation based on its findings to determine whether the district court has abused its discretion. *Marriage of Elser*, 52 St. Rep. at 436 (citing *In re Marriage of Hunt* (1994), 264 Mont. 159, 164, 870 P.2d 720, 723).

Julie first contends that the court incorrectly found that both parties have "equally shared custody" because, in fact, she has had the children for more days than Arlen. However, whether or not Julie had the children for more days than Arlen was a disputed question of fact. Julie's testimony in that regard was controverted by Arlen's and the testimony of his wife, Janet. After reviewing the testimony of each, we conclude that the District Court's finding that custody was shared equally was supported by substantial evidence and was not clearly erroneous.

6

Furthermore, whether Julie had the children a greater number of days during each year than Arlen is not relevant to the statute which controlled the District Court's decision.

Modification of custody was appropriately considered in this case pursuant to § 40-4-219(1)(f), MCA, which provides as follows:

> The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:
> . .
> (f) the custodial parent has changed or intends to change the child's residence to another state.

This proceeding was initiated in response to written notice from Julie that she intended to change the children's residence to another state. That decision was made and notice was sent subsequent to entry of the prior decree. The only issue for the District Court was, then, whether it was in the children's best interests that they remain in Helena or go with Julie to Bothell.

Although Julie offered evidence that she could provide a satisfactory home and education for her children in Bothell, Arlen also offered substantial evidence that it would be in their best interests to remain in Helena. For example, there was testimony that the children have a good relationship with their stepmother, and due to her joint effort with their father, other care for the children is rarely necessary when they are at his home. There was evidence that the children are happy and well-adjusted while in the

custody of both parents, but that in Helena they will be able to continue attending the same elementary school where they have done well in the past. Although they have relatives in Bothell, they also have relatives in Helena with whom they have had regular and close interaction. Although Tom Walstad made no recommendation regarding the children's residential arrangement, he did note that the least disruptive alternative for the children would be for them to remain primarily in Helena.

Our role as a court of appellate review is not to try and weigh conflicting evidence regarding the children's best interests where two equally qualified parents claim, but cannot at the same time, exercise residential custody. The district court is in a better position to do that. Our role is simply to determine whether the district court's findings are clearly erroneous and, if not, whether in the application of those findings the district court abused its discretion. We conclude that the District Court's findings regarding the children's best interests were not clearly erroneous. After a review of its decision in light of those findings, we conclude that the court did not abuse its discretion when it awarded residential custody to Arlen during the school year.

Julie also contends that the District Court erred when it prohibited her from removing her children to the state of Washington without finding that doing so would seriously endanger the children. However, other than the District Court's order

8

modifying the couple's custody arrangement, we can find no specific injunction or restraining order which restricted Julie's or the children's movement. Even if it had, we have pointed out previously in **Marriage** *of Elser* that a district court may restrain removal of children from the state where it would prejudice the children's rights or welfare. In the same case, we held that "prejudice" within the meaning of § 40-6-231, MCA, is simply the opposite of the children's "best interest." Since we have concluded that the District Court did not err when it determined the children's best interests, we also conclude that the District Court would not have abused its discretion had it restrained their removal from the state by their mother.

For these reasons, we affirm the order of the District Court which modified the residential arrangement of the children and these parents' visitation schedules.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1995 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_Karla M. Gray_

_[signature]_

_William E. Hunt Sr._

_W. William Leaphart_
Justices

**10**

September 8, 1995

CERTIFICATE OF 'SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Charles E. Petaja, Esq.
1085 Helena Ave.
Helena, MT 59601

Mark P. Yeshe
Attorney at Law
P.O. Box 413
Helena, MT 59624-0413

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy