JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion on the first, and dispositive, issue in this case. I would reverse and remand for such further proceedings as may be appropriate.
The threshold issue in this case is whether the District Court’s April 18, 1995, order for an equal time custody arrangement is a modification of its earlier custody determination or a mere implementation of an earlier order. If the order at issue is a modification of a prior custody decree which effects a substantial change in the child’s primary residence, it is clear that the jurisdictional prerequisites of § 40-4-219, MCA, must be met (In re Marriage of Johnson (1994), 266 Mont. 158, 166, 879 P.2d 689, 694), and is undisputed that those requirements were not considered by the District Court here. If, on the other hand, the order merely implements a prior custody decree, then the District Court need consider only the “best interest” test contained in § 40-4-212, MCA.
The Court concludes that the District Court’s April 18,1995, order did not modify an earlier custody order, but merely implemented such *368 an order. It is my view that the Court fails to read the earlier order carefully, and then to apply the law to that order. Doing so mandates a reversal of the District Court.
Mary Ann and Gordon’s marriage was dissolved by decree dated May 30,1990. The District Court made extensive findings of fact and conclusions of law with regard to distribution of the marital estate, child custody and child support. Only the findings and conclusion relating to child custody are relevant here.
Mary Ann and Gordon’s minor daughter Ashley was just over two years old at the time of the dissolution. The parties agreed, and the District Court found, that it was in Ashley’s best interest to be placed in the joint legal custody of her parents, with Mary Ann designated as the primary residential custodian.
Ashley had been traumatized by the circumstances surrounding the dissolution of her parents’ marriage and counseling was necessary to help her deal with the situation. Dr. Hugh Black had been counseling Ashley and presented a two-phase residential plan for the court’s consideration. In Finding of Fact Number 9, the District Court set out the “Initial Residential Plan.” During the period of the initial plan, Ashley would continue to receive mental health counseling and Gordon’s visitations with Ashley during that time were severely limited.
The District Court also set out in Finding of Fact Number 9 the “Phase-in of Permanent Residential Plan.” Under the permanent plan, Gordon had visitation on alternating weekends and school holidays and on two evenings each week; each party was entitled to spend one-half of the summer vacation with Ashley.
In Finding of Fact Number 11, the District Court stated that, at the time Ashley reached school age, the parties should consult with Dr. Black (or another qualified professional); the consultation “shall have as its goal a determination of whether equal time with both parents is in the child’s best interests.” The finding went on to state that an equal time custody arrangement would be ordered if, at that time, a qualified professional felt that it was in Ashley’s best interests.
The District' Court’s May 30, 1990, decree contained only one conclusion of law relating to child custody. Conclusion of Law Number 3 states: “It would be in the best interest of the minor child if her custody and visitation were regulated as set forth in Finding of Fact Number 9 above.” As outlined above, that finding ends with a residential plan which, by its terms, is denominated “permanent.” Nothing in the District Court’s conclusions refers to either the “goal” *369 relating to equal time which is contained in Finding of Fact Number 11 or the potential referenced there for redetermining Ashley’s best interests at some future time.
Thus, it is clear that the District Court’s May 30, 1990, custody determination ends at the point where the “Permanent Residential Plan” has been phased in. At that point, Mary Ann remained Ashley’s primary residential custodian, with liberal visitation by Gordon.
Both statute and case law are clear with regard to modifying a prior custody decree. By its terms, § 40-4-219, MCA, vests discretion in a district court to modify a prior custody decree, but only if statutory requirements are met. A“prior custody decree” is “a custody determination contained in a judicial decree or order ....” Section 40-4-219(7), MCA (emphasis added). We consistently have held that the § 40-4-219, MCA, requirements are jurisdictional prerequisites to modification of a custody decree. See, e.g., Marriage of Johnson, 879 P.2d 689, and cases cited therein.
Nor can it be disputed that a change from Ashley residing primarily with Mary Ann to an “equal time” custody arrangement where Ashley would reside with Gordon for six months of the year is a significant change in a child’s living arrangements. Indeed, Dr. Black testified in this case that the change proposed by Gordon — and recommended by Dr. Black — was a fairly radical change in the existing custody arrangement.
As we stated so recently in Marriage of Johnson, motions to modify child custody provisions in a dissolution decree “which have the effect of substantially changing the primary residence” of a child must satisfy the jurisdictional requirements contained in § 40-4-219, MCA. Marriage of Johnson, 879 P.2d at 694. The legislature’s rationale for imposing such requirements was to provide for the continuity and stability of a child’s living arrangements. Marriage of Johnson, 879 P.2d at 692.
The permanent residential plan adopted as the District Court’s conclusion of law in 1990 is the “custody determination” made by the court. Whatever the effect of the court’s finding relating to a possible equal time custody arrangement in the future, it cannot constitute a “custody determination.” A custody “determination” can be made only by a court and only after consideration by the court of “all relevant factors.” Section 40-4-212(1), MCA. Under § 40-4-219, MCA, and Marriage of Johnson, the jurisdictional prerequisites to modifying the 1990 custody decree clearly must be met in this case before a modification effectuating equal time custody can be made. Just as *370 clearly, those prerequisites were not even considered by the District Court.
The Court follows the District Court’s lead in attempting to distinguish this case from Marriage of Johnson by relying on the fact that the District Court “contemplated” a future equal time custody arrangement back in 1990. It quotes at length from the District Court’s Finding of Fact Number 11 to that effect. “Contemplating” something which might occur a number of years in the future cannot be said— even as a matter of logic — to “determine custody” for that future time. Indeed, such a “contemplation” cannot constitute a “custody determination” given the language in § 40-4-212, MCA. The same is true of any “goal” or “plan” contained in Finding of Fact Number 11.
Moreover, even if, at the time of the original decree, the District Court envisioned being able to make substantial changes in Ashley’s primary residence in the future on the basis of a “best interest” analysis, the law changed in that regard with our decision in Marriage of Johnson on August 12, 1994. Like this Court, the District Court was required to follow current law at the time of its 1995 decision changing Ashley’s physical custody to an equal time custodial arrangement.
The Court’s decision in this case gives district courts carte blanche to make “custody determinations” in derogation of the requirements of § 40-4-212, MCA. It also nullifies our effort in Marriage of Johnson to give meaning to the legislature’s requirements for modifying a prior custody decree. District courts are now authorized to include a variety of future-oriented provisions in original decrees to preempt the necessity of making an appropriate decision about modifying custody in the future under legislatively required, and Marriage of Johnson mandated, jurisdictional prerequisites. Stability and continuity in a child’s living arrangements will be precluded at the outset by “findings” which cannot properly be made at that time. I cannot agree.
I dissent.
JUSTICE NELSON joins in the foregoing dissent of Justice Karla M. Gray.