No. 04-246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 111

IN RE THE MARRIAGE OF

KAY OLSON nka KAY EMMERT,

        Petitioner and Appellant,

    v.

JAMES OLSON,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake, Cause No. DR 00-136
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Michael H. Keedy, Henning & Keedy, Kalispell, Montana

        For Respondent:

        James Olson, *pro se*, Cut Bank, Montana

Submitted on Briefs:  August 31, 2004

Decided:  May 4, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court

¶1     Kay Olson (Kay) appeals an order of the District Court for the Twentieth Judicial District, Lake County, denying her motion to modify the parties' parenting plan. We remand.

¶2     Kay raises the following issues on appeal:

¶3     1.  Are the trial court's findings clearly erroneous?

¶4     2.  Did the trial court err in failing to provide specific findings as to the presumption specified in § 40-4-219(3), MCA, and in failing to apply that presumption?

¶5     3.  In the alternative, should this matter be remanded to the trial court for a parenting evaluation?

## Factual and Procedural Background

¶6     The District Court entered a Decree of Dissolution of the parties' marriage on January 9, 2002, granting the parties joint custody of their daughter, Jamie, born December 10, 1996. Jim was designated the primary custodial parent and Kay was awarded reasonable and liberal visitation rights.

¶7     Sometime in the fall of 2002, Jim was terminated from his job as a police officer in Cut Bank. Jim contacted Kay and informed her that he was on medication and unable to care for Jamie. Consequently, on October 30, 2002, Kay and Jim entered into a Stipulated Modified Parenting Plan wherein they agreed that Kay would become the primary custodial parent. The new parenting plan specified that Jamie would reside with Kay during the

school year and that Jamie would visit Jim for eight weeks each summer. Each parent was entitled to have Jamie on alternating weekends during the custody of the other parent.

¶8 In addition, the new parenting plan stipulated that neither parent was to pay child support to the other during the time Jim remained unemployed. However, once Jim became employed, he was to pay child support as provided in the Montana Child Support Guidelines. The parenting plan also required that both parents notify the other parent in writing of any changes in residence, of employers, or of health insurance coverage.

¶9 On February 24, 2004, Kay sought a modification of the parties' Stipulated Modified Parenting Plan, requesting that Jim's visitation rights be changed from unsupervised to supervised. The time and duration of the visits were to remain the same.

¶10 The District Court granted Kay's motion on an interim basis and directed that Jim appear on March 17, 2004, to show cause why the interim plan should not be made permanent. The order further specified that Jim was not to contact his daughter pending the hearing on Kay's motion.

¶11 At the hearing in this matter, Kay testified that from October 2002, to the time of the hearing, Jim moved from place to place and worked at several jobs for short periods of time. Contrary to the provisions of the parenting plan, Jim failed to notify Kay each time he changed residences or jobs. Kay stated that this became a significant problem in the summer of 2003 when Jim failed to return Jamie to Kay after Jim's summer visitation ended. Kay testified that since she had no address for Jim, she had to enlist the aid of the police who

were able to locate Jim and Jamie after randomly searching the neighborhood where relatives thought Jim lived.

¶12 During part of this summer 2003 visitation, Jim rented a house in Great Falls next to Kandi Gaskins (Gaskins). Gaskins testified at the hearing that she became friendly with Jim and Jamie during the time they lived next door and that from what she observed, Jim was not properly providing for Jamie. Gaskins stated that she provided Jim and Jamie with groceries after Jamie complained on several occasions that she was hungry or that she had not eaten. In addition, Gaskins testified that she bought Jamie a pair of shoes because Jamie's shoes had become too small and that Gaskin's mother bought $80.00 worth of clothing for Jamie.

¶13 Gaskins further testified that she loaned Jim several pieces of furniture because, other than a bed for Jamie, he had none. After Jim received an eviction notice and prior to his moving away, Jim sold the furniture Gaskins had loaned him to surrounding neighbors to raise money. After some difficulties, Gaskins was able to retrieve the furniture from the neighbors.

¶14 Gaskins also testified to an incident in August 2003, when Jim entered her home uninvited. Consequently, Gaskins filed a report with the Great Falls Police Department. In that report, Gaskins stated that Jim seemed very depressed and that he acted as if the world was against him. She also stated in that report that Jim had told her that he wanted to become a truck driver and that once he did that, he planned to steal Jamie away from Kay. Moreover, Gaskins testified that after Jamie was removed from his custody, Jim alluded to suicide.

4

¶15 Kay testified at the hearing that there were other problems during the 2003 summer visitation. According to the parenting plan, Kay was entitled to custody of Jamie on alternating weekends during Jim's summer visitation, however, except for one weekend, Jim denied Kay the right to see Jamie. In addition, during the 2003 summer visitation, Kay testified that Jim's brother informed her that he was taking care of Jamie for a few days because Jim had been hospitalized for drinking while using medication.

¶16 Jim did not testify at the hearing. Instead Jim, acting *pro se*, called two witnesses, William Barron (Barron) and Daniel Burns (Burns). Barron, the Lake County Sheriff Coroner, testified that he had known Jim for many years and that he had never seen Jim abuse alcohol or use illegal drugs. Barron also testified that he had observed Jim and Jamie together and that they seemed very close.

¶17 Burns, who employs Jim at both the motel and the car dealership that Burns owns in Cut Bank, testified that he had never had the opportunity to observe Jim and Jamie together. Burns did testify that Jim was a great employee and that he had never seen Jim abuse alcohol or drugs.

¶18 The District Court issued its Order Denying Petitioner's Motion to Modify Parenting Plan on March 22, 2004. The District Court's Findings of Fact consisted of the following:

> 1. That Petitioner presented no facts that have arisen since the prior parenting plan which cause a change in the circumstances of the minor child of the parties.
> 2. That there has been no change of circumstances that both parties continue their vindictiveness toward the other party contrary to the best interest of their daughter as previously determined by this Court.

Based on these findings, the court concluded that Kay had failed in her burden under § 40-4-219, MCA, to show that facts had arisen since the prior parenting plan which would constitute a change in circumstances sufficient to necessitate an amendment of the parenting plan to serve the best interests of the child. Consequently, the court denied Kay's motion to modify and ordered that the Stipulated Modified Parenting Plan remain in full force and effect. Kay appeals.

**Discussion**

¶19 Kay argues on appeal that the District Court's findings are clearly erroneous; that the District Court erred in failing to provide specific findings as to the presumption specified in § 40-4-219(3), MCA, and in failing to apply that presumption; and, in the alternative, that this matter should be remanded to the District Court for a parenting evaluation.

¶20 We review a district court's findings relating to custody modification to determine whether those findings are clearly erroneous. *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 15, 307 Mont. 60, ¶ 15, 36 P.3d 874, ¶ 15 (citing *In re Marriage of Johnson* (1994), 266 Mont. 158, 166, 879 P.2d 689, 694). Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *Arneson-Nelson*, ¶ 15. In the case *sub judice*, we are unable to determine from the District Court's cursory findings whether they are supported by substantial evidence or whether the court misapprehended the effect of the evidence.

6

¶21 Moreover, § 40-4-219(1), MCA, provides that a district court may amend a parenting plan if it finds that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. In this case, the court found that Kay had presented "no facts that have arisen since the prior parenting plan which cause a change in the circumstances of the minor child of the parties." The court made this determination without any reference to § 40-4-219(3), MCA, which provides that "[t]he court shall presume a parent is not acting in the child's best interest if the parent does any of the acts specified in subsection (1)(d) or (8)." Subsection (8) of § 40-4-219, MCA, is not applicable here, however, subsection (1)(d) is. It provides:

> In determining the child's best interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:
> . . . .
> (d) one parent has willfully and consistently:
> (i) refused to allow the child to have any contact with the other parent; or
> (ii) attempted to frustrate or deny contact with the child by the other parent . . . .

Section 40-4-219(1)(d), MCA. Nothing in the findings of the trial court indicate that it considered these presumptions.

¶22 Accordingly, we remand this case to the District Court for detailed findings of fact and conclusions of law.

¶23     Remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE